OPINION
{¶ 1} Dale Anthony, Jr. ("Anthony") appeals the January 22, 2003 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division adopting the magistrate's decision of July 9, 2002, temporarily committing Anthony's two children, 18 month old Ashley Anthony ("Ashley") and six month old Tamara Anthony ("Tamara"), to the Ashtabula County Children Services Board ("ACCSB") and placing the children with the maternal grandparents. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} On April 8, 2002, Tamara was presented to the Ashtabula County Medical Center with a displaced fracture to her right femur. The presenting history indicated that the cause of the injury was Ashley jumping on Tamara's leg. Because of Tamara's age and the injury sustained, ACCSB was contacted by the hospital which, in turn, contacted the Ashtabula City Police.
 {¶ 3} At the hospital, Anthony's wife, Amanda Anthony ("Amanda"), spoke to Detective Joe Cellitti ("Cellitti"). Amanda indicated that she was not in the room when the incident occurred. Anthony also gave a statement to Cellitti at the hospital indicating that he observed Ashley jumping up and down on Tamara's leg as he returned from getting a drink from the other room.
 {¶ 4} Tamara was subsequently transferred to Rainbow Babies and Children's Hospital ("Rainbow"). Dr. Lolita McDavid ("Dr. McDavid"), a specialist in pediatric and adolescent medicine at Rainbow, was requested to perform a consultation to determine whether the injury was accidental or inflicted. Based on the nature of the injury (a displaced spiral fracture of the femur) and the immobility of a six month old, Dr. McDavid opined that the injury in this case would not likely occur unless inflicted. Moreover, Dr. McDavid concluded that the history given was not consistent with Tamara's injury because an eighteenth month old would not have the strength to inflict such an injury.
 {¶ 5} On April 9, 2002, ACCSB obtained custody of Tamara and Ashley through an emergency order. A verified complaint for temporary custody based on abuse of Tamara and dependency of Ashley was filed by ACCSB on April 10, 2002.
 {¶ 6} On that same day, Anthony made a written statement to Cellitti at ACCSB. The content of the written statement regarding Anthony's version of the incident was essentially consistent with his statement at the hospital on the date of the incident.
 {¶ 7} On April 11, 2002, Anthony stipulated to a finding of probable cause at the shelter care hearing. An adjudicatory hearing was conducted on June 28, 2002, and concluded on July 8, 2002. Dr. McDavid testified that a displaced spiral fracture, the type of injury suffered by Tamara, is caused by a twisting motion. In this case, Dr. McDavid testified that Tamara's injury required grabbing and twisting her leg. Dr. McDavid opined that Ashley would not have the strength to inflict such an injury and that Ashley jumping on Tamara's leg would not cause such an injury. Dr. McDavid further opined that, because of the immobility of a six month old, the injury likely was inflicted. Dr. McDavid, therefore, concluded that in her medical opinion the cause of the injury "is highly suspicious for inflicted injury" and that the injury "is in variance with [Tamara's] stated age and with the history given."
 {¶ 8} Dr. McDavid further testified that Amanda made statements to Dr. McDavid regarding Anthony's disciplinary methods of spanking Ashley to teach her "right from wrong." These disciplinary methods concerned Dr. McDavid because spanking an 18 month old child to try to teach the child right from wrong would evidence a lack of "parenting skills." Combined with the nature of the injury to Tamara and Ashley's behavior, Dr. McDavid testified that she was concerned for Ashley's safety if Ashley were to remain in the household.
 {¶ 9} Anthony offered no expert testimony to refute Dr. McDavid's testimony. Anthony did not testify at the hearing, but Anthony did proffer testimony from Amanda, Terra Lohr, a neighbor of appellant, and Rosario Velardez, Amanda's mother, regarding Ashley's rough nature with Tamara and other children. At the conclusion of the hearing, the Magistrate found Tamara to be abused and Ashley to be dependent. A dispositional hearing was conducted on July 9, 2002. The magistrate committed Tamara and Ashley to ACCSB and placed both children with their maternal grandparents.
 {¶ 10} Anthony timely filed objections to the magistrate's decision on July 22, 2002. The trial court overruled Anthony's objections and adopted the Magistrate's decision on September 26, 2002. Anthony commenced this appeal on October 25, 2002.
 {¶ 11} Since the trial court's judgment did not contain a specific order concerning custody and, therefore, was not a final appealable order, this court sua sponte remanded this case to the trial court on January 13, 2003, to issue such an order. On January 22, 2003, the trial court issued a judgment entry ordering commitment of Tamara and Ashley to ACCSB and placement of the children with the maternal grandparents.
 {¶ 12} On February 14, 2003, this court ordered that Anthony's notice of appeal filed on October 23, 2002, be considered a premature appeal. Pursuant to App.R. 4(C), "[a] notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time period is treated as filed immediately after the entry." Thus, Anthony's appeal to this court is timely. Anthony now asserts the following errors:
 {¶ 13} "[1.] Ashtabula County Children Services failed to sustain its burden of proof regarding the subject children, and the juvenile court therefore erred in finding abuse and dependency.
 {¶ 14} "[2.] The court committed prejudicial error in admitting the statement of appellant over counsel's objection."
 {¶ 15} In his first assignment of error, Anthony argues that ACCSB failed to proffer clear and convincing evidence that Tamara was abused and Ashley was dependent. In essence, Anthony argues that Dr. McDavid's testimony concerning the intentional nature of the injury to Tamara does not satisfy this burden.
 {¶ 16} In an adjudicatory hearing regarding a claim of dependency, neglect and/or abuse, the requisite burden of proof is by clear and convincing evidence. Juv.R. 29(E)(4). Clear and convincing evidence is that measure or proof "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is more than a preponderance of the evidence, but not to the level of beyond a reasonable doubt. Id.
 {¶ 17} "Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact has sufficient evidence before it to satisfy this burden of proof." In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, citing Cross, 161 Ohio St. 469. Moreover, because a claim that there was a failure to meet the requisite burden of proof essentially challenges the weight given by the trial court to the evidence in the record, see In re Haker (Dec. 3, 1999), 11th Dist. No. 98-P-0106, 1999 Ohio App. LEXIS 5771, *6-7, a reviewing court may not reverse the trial court's ruling if the "judgment [is] supported by competent, credible evidence going to all the material elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74 ("An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge.").
 {¶ 18} Pursuant to R.C. 2151.031(D), the definition of "abused child" includes "any child who *** [b]ecause of the acts of his parents *** suffers physical or mental injury that harms or threatens to harm the child's health or welfare." The definition also includes "any child who*** [e]xhibits evidence of any physical *** injury *** inflicted otherthan by accidental means *** which is at variance with the historygiven." R.C. 2151.031(C) (emphasis added). The plain language of R.C.2151.031(C) clearly indicates that parental fault is not required for a finding of abuse. See In re Pitts (1987), 38 Ohio App.3d 1, 5 ("During the adjudicatory phase of the proceedings, the trial court does not have to find any fault on the part of a parent, guardian or custodian in order to find that the child is `abused' ***.").
 {¶ 19} In this case, ACCSB proffered uncontroverted expert testimony from Dr. McDavid that Tamara's injury was inflicted, rather than accidental. Dr. McDavid further testified that, in her expert opinion, Tamara's injury was at variance with the history given by Anthony. Anthony failed to refute this testimony. Although Anthony offered testimony that Ashley was rough with Tamara and others, none of this testimony was from a witness with personal knowledge of the incident that caused Tamara's injury. Thus, the trial court's judgment rested on competent and credible evidence. Moreover, this uncontroverted expert testimony was sufficient to support a finding that Tamara was abused as defined in R.C. 2151.031 by clear and convincing evidence.
 {¶ 20} R.C. 2151.04(D)'s definition of a "dependent child" includes "any child *** [that] is residing in a household in which a parent *** committed an act that was the basis for an adjudication that a sibling of the child *** is an abused *** child, [and] [b]ecause of the circumstances surrounding the abuse *** and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent." Similarly to the definition of "abuse," a finding that a child is "dependent" does not require parental fault. SeeIn re Riddle, 79 Ohio St.3d 259, 262, 1997-Ohio-391.
 {¶ 21} Thus, dependency of a child requires clear and convincing proof of two factors: (1) a parent residing in the household committed an act that resulted in an adjudication that a sibling was abused, and (2) the dependent child is in danger of being abused by the parent. As discussed above, Tamara was an abused child and, therefore, the first element necessary to prove dependency of Ashley is satisfied.
 {¶ 22} Dr. McDavid testified that there are concerns for Ashley remaining in the household because of Ashley's behavior and the disciplinary methods utilized on her. Moreover, the nature and extent of Tamara's injury clearly indicate that any child residing in the household would be in danger of abuse if he or she were to remain in the household. We believe this evidence is sufficient for the trial court to permissibly conclude that Ashley would be in danger of future like abuse.[1] Thus, there was sufficient evidence for the trial court to find dependency by clear and convincing evidence.
 {¶ 23} For these reasons, Anthony's first assignment of error is overruled.
 {¶ 24} In his second assignment of error, Anthony argues that an unsigned version of Anthony's written statement, rather than the original, was offered and accepted into evidence without proper authentication or identification. This assignment of error seems to argue that the copy in evidence does not satisfy the best evidence rule or was not properly authenticated.
 {¶ 25} Adjudicatory hearings require compliance with the Ohio Rules of Evidence. In re Ranker (Oct. 6, 2000), 11th Dist. No 99-P-0072, 2000 Ohio App. LEXIS 4662, *30-31. Evidentiary rulings are within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Long (1978), 53 Ohio St.2d 91, 98. An abuse of discretion implies more than an error of law or of judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Berk v. Mathews (1990), 53 Ohio St.3d 161, 169.
 {¶ 26} Evid.R. 1002 requires proffering the original writing to prove the content of that writing, unless "otherwise provided in these rules." Duplicates of the original are admissible to the same extent as the original unless a genuine issue is raised as to the original's authenticity or it would be unfair to admit the duplicate. Evid.R. 1003. A party seeking to exclude a duplicate has the burden of demonstrating that the duplicate should not be admitted. Natl. City Bank v. Fleming
(1981), 2 Ohio App.3d 50, 57.
 {¶ 27} In this case, Anthony raised a question as to the duplicate's authenticity because of the absence of a signature and a date on the duplicate. Anthony, however, never raised an issue as to the original's authenticity. Even if Anthony met his burden to exclude the duplicate pursuant to Evid.R. 1003, "[t]he original is not required, and other evidence of the contents of the writing *** is admissible if *** all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith ***." Evid.R. 1004(1). Cellitti testified that the original statement had been misplaced and Anthony failed to prove that the misplacement was perpetuated in bad faith. Thus, other evidence, including Cellitti's direct testimony concerning the statement, as well as the duplicate copy, would be admissible, pursuant to Evid.R. 1004, as other evidence of the original's content.
 {¶ 28} Prior to a court finding evidence to be admissible, however, the evidence must be properly authenticated or identified so as to "support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). One such method of proper authentication or identification is testimony from a witness with knowledge that the evidence is what it is claimed to be. Evid.R. 901(B)(1).
 {¶ 29} In this case, Cellitti testified that he was the one who obtained the statement from Anthony and that the evidence at issue was a copy of Anthony's statement which Cellitti saved to a computer disk. Cellitti further testified about the location, date, time, and contents of the statement. Obviously, Cellitti is a witness with knowledge regarding Anthony's statement and the copy of that statement which is at issue here.
 {¶ 30} For these reasons, the trial court did not abuse its discretion in admitting the copy of Anthony's statement into evidence. Moreover, Cellitti's testimony about the contents of Anthony's statement was admissible. Thus, any potentially erroneous admission of the copy of that statement would not be prejudicial and would, therefore, be harmless. See In re Thurlby (June 15, 2001), 11th Dist. No. 2000-A-0088, 2001 Ohio App. LEXIS 2714, *14 ("The erroneous admission of *** evidence is harmless if additional information, separate and apart from the erroneously admitted evidence, has been offered to prove that which the challenged evidence was offered to prove."); In re (1995),102 Ohio App.3d 338, 343 ("appellants must demonstrate not only that there was error but that such error operated to their prejudice.").
 {¶ 31} Thus, Anthony's second assignment of error is overruled.
 {¶ 32} For the foregoing reasons, we conclude that there was competent and credible evidence to support the trial court's finding by clear and convincing evidence that Tamara was an abused child and that Ashley was a dependent child. We also conclude that the trial court did not abuse its discretion in permitting the copy of Anthony's statement to be admitted into evidence. Thus, we hold that Anthony's assignments of error are without merit. The decision of the Ashtabula County Court of Common Pleas, Juvenile Division, temporarily committing Tamara and Ashley to ACCSB and placing them with their maternal grandparents is, hereby, affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.
[1] We do not hold that Ashley's behavior and the disciplinary methods used on her, without more, would be sufficient for a finding of dependency in this case. Rather, we hold that these factors combined with the finding of abuse of Tamara and the nature and extent of Tamara's injury support such a finding.