THE STATE EX REL. BEACON JOURNAL PUBLISHING COMPANY ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* CITY OF AKRON ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *State ex rel. Beacon Journal Publishing Co. v. Akron,* 104 Ohio St.3d 399, 2004-Ohio-6557.]

(No. 2004–0665—Submitted October 12, 2004—Decided December 15, 2004.)

————————

**Per Curiam.**

### Sherman–Vaughn Incident

{¶ 1} On February 28, 2001, Akron Police Officers Rodney Sherman and Howard Vaughn were on duty when Officer Sherman received a personal telephone call from his cousin. Officer Sherman's cousin complained about her 15–year–old son's unruly behavior and requested that the officers scare him into behaving properly.

{¶ 2} The officers responded to the mother's request and manhandled the boy by repeatedly shoving him onto his bed. After the officers made the boy clean his bedroom, they handcuffed him. At the mother's suggestion, the officers took the boy for a ride in their police cruiser to give him an idea of what it would feel like to be arrested. The officers transported the boy to a nearby park and removed his handcuffs. The officers took the boy behind a maintenance shed and again pushed him around. Officer Sherman drew his gun and shook the grip end in the boy's face. Officer Sherman then pushed the boy to the ground and covered him with leaves, telling the boy that this exercise represented his being buried as a result of his actions. The officers subsequently returned the boy home to his mother.

{¶ 3} On October 2, 2001, the Summit County Children Services Board ("SCCSB") reviewed a report of abuse concerning the child victim in the Sherman–Vaughn incident and forwarded it to the Akron Police Department. The referral was made to SCCSB by a person with a duty to report abuse under Ohio's child-abuse reporting statute, R.C. 2151.421. SCCSB's referral to the police included the names, addresses, and telephone number of the child and the child's parents, the child's age, the nature and extent of the child's known or suspected injuries, abuse, or neglect, the names of the perpetrators, and a brief description of the abusive conduct. SCCSB did not accept the case for ongoing investigation and had no further involvement in it.

{¶ 4} Based on the SCCSB referral, the police department's Internal Affairs Unit conducted a criminal investigation of Officer Sherman and Officer Vaughn. In this investigation, the child victim stated that his mother ignored his yelling when the officers pushed him around and that after he told his mother what had happened, she did not care. The Internal Affairs Unit substantiated most of the allegations of the child and concluded that the officers had violated numerous police-department rules and regulations. Although no criminal charges resulted from the internal-affairs investigation, Officer Sherman and Officer Vaughn were disciplined for violating police-department rules and regulations.

### Corice Street Rape

{¶ 5} On February 24, 2002, a 14–year–old girl was raped by two boys in a garage on Corice Street in Akron. Both rapists were strangers to the child and

her family. A neighbor eventually found the child and escorted her home. The parents took their daughter to the hospital, and the police made a report.

{¶ 6} On the morning of the next day, a hospital employee reported the rape to SCCSB, as required under R.C. 2151.421(A). SCCSB did not open a case concerning the rape because police were already involved, and the facts presented no concern about the care the child was receiving from her parents.

{¶ 7} The Akron Police Department prepared a uniform offense-and-incident report concerning the rape. The document used by the police for its rape report was its standard offense-and-incident form that covers any type of criminal activity.

{¶ 8} The child's mother contacted the Akron Beacon Journal, a newspaper published by the Beacon Journal Publishing Company ("Beacon Journal"), to complain about the lack of news coverage regarding her daughter's rape. The mother wanted to warn people of the two rapists at large in the neighborhood. The newspaper subsequently publicized the crime. Two weeks later, with the help of the child's family, the police arrested the two suspects. They were subsequently convicted of and sentenced for the crimes against the child.

## Memorandum of Understanding and Records Guidelines

{¶ 9} In September 2001, SCCSB and Akron Police Chief Michael Matulavich entered into a memorandum of understanding as required by R.C. 2151.421(J) to set forth the normal operating procedures to be employed by officials in the execution of their responsibilities under the child-abuse reporting statute and other statutory provisions. Under Section IV(A)(4) of the memorandum, "[i]n cases becoming known to SCCSB or law enforcement agencies where abuse/neglect is alleged to have been committed by a non-related perpetrator, law enforcement officers will be solely responsible for interviewing such perpetrators, filing criminal charges when appropriate, and referring/collaborating with SCCSB staff regarding any rehabilitative service needs of the child(ren) or family."

{¶ 10} In November 2001, an assistant law director for Akron issued guidelines to the police department for determining whether certain records are public records under R.C. 149.43, the Public Records Act. Under these guidelines, reports involving juvenile victims of any sex offense or abuse were not to be disseminated to the public.

## Records Requests

{¶ 11} In January 2002, Stephanie Warsmith, a reporter for the Beacon Journal, learned that Akron had suspended Officers Sherman and Vaughn for their treatment of the 15–year–old child. On January 10, 2002, Warsmith asked the police department for copies of the records relating to the internal-affairs

investigation of the Sherman–Vaughn incident. On January 14, 2002, the city released the records but deleted the names and most of the identifying information concerning the child and his mother.

{¶ 12} On January 18, 2002, Warsmith requested a complete, unredacted copy of the Sherman–Vaughn–incident records. The city denied the request.

{¶ 13} In March 2002, after being informed of the Corice Street rape by the victim's mother, Warsmith requested that the police department provide her with a copy of the incident report on the Corice Street rape. Akron denied Warsmith's request because it considered the report to be exempt as a matter involving abuse and neglect.

{¶ 14} On April 18, 2002, the Beacon Journal reiterated Warsmith's requests for an unredacted copy of the Sherman–Vaughn–incident internal-affairs investigative report and a copy of the incident report on the Corice Street rape. The Beacon Journal said that it would accept these documents with the reporting parties' names deleted. On April 26, 2002, Akron again rejected the requests, responding that the city did not want to risk committing a misdemeanor by improperly releasing the contents of a child-abuse report, citing R.C. 2151.421(H)(2) and 2151.99.

Mandamus

{¶ 15} On May 24, 2002, appellees and cross-appellants, Beacon Journal and Warsmith, filed a petition for a writ of mandamus in the Court of Appeals for Summit County. The Beacon Journal and Warsmith sought to compel appellants and cross-appellees, Akron and Police Chief Matulavich, to provide access to the complete Sherman–Vaughn–incident internal-affairs investigative report and the Corice–Street-rape incident report. The Beacon Journal and Warsmith also requested an award of attorney fees.

{¶ 16} The parties moved for summary judgment. The Beacon Journal and Warsmith submitted an affidavit of the mother of the Corice Street rape victim, supporting their request for a writ of mandamus. The child's mother stated that the police report filed by her and her husband with the police department was a report of a crime rather than a report filed under a child-abuse statute. She objected to the city's withholding the information, in part because its disclosure would have permitted the community to protect itself and help apprehend the two rapists. The child's mother, however, did not specify the child's name or suggest that disclosure of her child's name or other identifying information would support her reasons for disclosure.

{¶ 17} In their summary-judgment motion, the city and its police chief claimed that the requested records were exempt from disclosure under the Public Records Act because (1) they were confidential child-abuse reports under R.C.

2151.421 and (2) the constitutional right of privacy applied to them. They filed the requested records under seal.

{¶ 18} On July 24, 2003, the court of appeals granted summary judgment in favor of the Beacon Journal and Warsmith. The court of appeals granted a writ of mandamus to compel Akron and Police Chief Matulavich to provide access to unredacted copies of the Sherman–Vaughn–incident and Corice–Street-rape reports. The court of appeals reasoned that R.C. 2151.421(H)(1) did not exempt the reports from disclosure and that even if that statute applied to the information in the Corice–Street-rape report, the recording of that information in a uniform incident report invalidated the exemption. The court of appeals did not address the city's and its police chief's additional claim that the constitutional right of privacy exempted the records. The court of appeals also deferred its determination of the request for attorney fees pending further briefing.

{¶ 19} In September 2003, we sua sponte dismissed the appeal from the July 24, 2003 court of appeals decision for lack of a final appealable order. *State ex rel. Beacon Journal Publishing Co. v. Akron,* 100 Ohio St.3d 1405, 2003-Ohio-4948, 796 N.E.2d 534, citing *Ft. Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn.* (1993), 87 Ohio App.3d 840, 843, 623 N.E.2d 232.

{¶ 20} On April 21, 2004, the court of appeals awarded the Beacon Journal and Warsmith $13,233.62 of the $25,676.50 in attorney fees they had requested. The court of appeals determined that the Beacon Journal and Warsmith were not entitled to attorney fees concerning the failure to disclose the Corice–Street-rape report because Akron reasonably believed that the report was exempted from disclosure. The court of appeals further determined that the Beacon Journal and Warsmith were entitled to attorney fees relating to the mandamus claim for the Sherman–Vaughn–incident report because "[u]nlike the Corice Street Rape Reports, the Sherman–Vaughn Reports did not even arguably constitute a report of child abuse." The vast majority of the fees sought by the Beacon Journal and Warsmith related to work done by its in-house counsel.

{¶ 21} This cause is now before the court upon the appeal as of right of Akron and Police Chief Matulavich from the judgment granting the writ of mandamus to compel the disclosure of the Sherman–Vaughn–incident and Corice–Street-rape reports and granting in part the request for attorney fees. This cause is also before the court upon the cross-appeal of the Beacon Journal and Warsmith from the judgment denying in part their request for attorney fees.

## Mandamus

{¶ 22} The Beacon Journal and Warsmith requested writs of mandamus to compel Akron and its police chief to provide them with access to an unredacted

copy of the Sherman–Vaughn–incident internal-affairs investigative report and to a copy of the Corice–Street-rape incident report.

{¶ 23} Mandamus is the appropriate remedy to seek compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 4. " 'R.C. 149.43 must be construed liberally in favor of broad access to records kept by public offices, and any doubt is to be resolved in favor of disclosure of the records.' " *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Cincinnati Bd. of Edn.*, 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, ¶ 10, quoting *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 433, 732 N.E.2d 960.

{¶ 24} The parties concede that the requested records constitute records kept by a public office—in this case, the police department. See R.C. 149.011(A) and (G).

{¶ 25} But Akron and Police Chief Matulavich assert that these records fall within R.C. 149.43(A)(1)(v), which excepts from the Public Records Law "[r]ecords the release of which is prohibited by state or federal law." They claim that the Sherman–Vaughn–incident and Corice–Street-rape reports are exempt because they are confidential child-abuse investigative reports and are protected by constitutional privacy rights. In analyzing these claims, we strictly construe exceptions against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 16.

Child–Abuse Investigative Reports

{¶ 26} As we recently observed, because "[c]hild abuse is a pervasive and devastating force in our society * * * [and abused] children are helpless to protect themselves, the legislatures in all 50 states, as well as the District of Columbia and three territories, have enacted child-abuse reporting laws." *Yates v. Mansfield Bd. of Edn.*, 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, ¶ 12–13.

{¶ 27} R.C. 2151.421 is Ohio's child-abuse reporting provision. R.C. 2151.421 "sets forth a comprehensive scheme for the reporting of allegations of child abuse and neglect and threats of child abuse and neglect and for the investigation of such reports by public children services agencies." 1989 Ohio Atty.Gen.Ops. No. 89–108, paragraph one of the syllabus. "The General Assembly enacted R.C. 2151.421 to provide special protection to children from abuse and neglect." *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 342, 750 N.E.2d 539.

{¶ 28} Under R.C. 2151.421(A)(1)(a) and (b), certain officials and professionals—e.g., attorneys and physicians—are required to report known or suspected child abuse or neglect to "the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred." Other individuals may report known or suspected child abuse or neglect to the same entities specified in R.C. 2151.421(A). See R.C. 2151.421(B). Any report made under R.C. 2151.421(A) or (B) may be made by telephone or in person and, upon request by the receiving agency or officer, shall be followed by a written report. R.C. 2151.421(C).

{¶ 29} Upon receipt of a report of known or suspected child abuse or neglect under R.C. 2151.421(A) or (B), a municipal or county peace officer must refer the matter to the appropriate children-services agency. R.C. 2151.421(D). Within 24 hours of each report of known or suspected child abuse or neglect, the public children-services agency shall investigate each report in cooperation with the law-enforcement agency and in accordance with the memorandum of understanding. R.C. 2151.421(F)(1). The public children-services agency shall report each case to a central registry and shall submit a written report of its investigation to the law-enforcement agency. R.C. 2151.421(F)(1). The public children-services agency then makes recommendations that it considers necessary to protect the children to the county prosecuting attorney or city director of law. R.C. 2151.421(F)(2). Reports made under R.C. 2151.421 are confidential. R.C. 2151.421(H)(1).

{¶ 30} Akron and Police Chief Matulavich claim that the Sherman–Vaughn-incident and Corice–Street-rape reports either constitute confidential child-abuse reports under R.C. 2151.421 or contain confidential information from R.C. 2151.421 child-abuse reports. With exceptions that are inapplicable here, "R.C. 2151.421(H)(1) clearly removes child abuse investigation reports compiled under that statute from the mandatory disclosure provisions of R.C. 149.43(B)" by providing, "Any report made under this section is confidential." *State ex rel. Renfro v. Cuyahoga Cty. Dept. of Human Serv.* (1990), 54 Ohio St.3d 25, 27, 560 N.E.2d 230; *Johnson v. Johnson* (1999), 134 Ohio App.3d 579, 583, 731 N.E.2d 1144.

{¶ 31} The Beacon Journal and Warsmith assert that the city's and the police chief's reliance on R.C. 2151.421(H)(1) is misplaced because R.C. 2151.421 protects children from information being released related to abuse or neglect only by their parents, custodians, and guardians in "family settings" and does not cover known or suspected child abuse by other perpetrators—e.g., the officers in the Sherman–Vaughn incident and the two boys in the Corice Street rape.

{¶ 32} This assertion is incorrect. R.C. 2151.421(A)(1)(a) and (B) do not restrict the reporting of child abuse or neglect to the family setting. Instead, the

statute refers broadly to a child who has "suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child." R.C. 2151.421(A)(1)(a) and (B).

{¶ 33} Moreover, R.C. 2151.031 defines an abused child for purposes of R.C. Chapter 2151 as any child who "[i]s the victim of 'sexual activity' as defined under Chapter 2907" or "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means." R.C. 2151.031(A) and (C). R.C. 2151.031(A) and (C) do not require that the abuser be a parent, guardian, or custodian, nor do these provisions require parental fault. *In re Anthony*, Ashtabula App. No. 2002–A–0096, 2003-Ohio-5712, 2003 WL 22429035, ¶ 18 ("The plain language of R.C. 2151.031[C] clearly indicates that parental fault is not required for a finding of abuse"); *In re Leu* (Apr. 30, 1993), Wood App. No. 92WD053, 1993 WL 134004, * 2 ("A finding of abuse * * * need not include a specific finding that a parent or custodian is at fault"). "All that is necessary is that the child be a victim, regardless of who is responsible for the abuse. The focus is upon harm to the child, not upon parental or custodial blameworthiness." *In re Pitts* (1987), 38 Ohio App.3d 1, 5, 525 N.E.2d 814; see, generally, Giannelli & Yeomans, Ohio Juvenile Law (2004) 80, Section 9:12.

{¶ 34} Therefore, the reports at issue involve child abuse. The child victim in the Corice Street rape was a victim of sexual activity, and the child victim in the Sherman–Vaughn incident was pushed around and was threatened with physical injury. In fact, because some of the evidence in the Sherman–Vaughn internal-affairs investigative report indicates that the officers acted in part at the behest of the child's mother, the information might be protected even under the Beacon Journal's and Warsmith's interpretation of R.C. 2151.421.

{¶ 35} Nevertheless, reports that document child abuse are not necessarily confidential child-abuse investigatory records under R.C. 2151.421(H)(1). "While [public children-services agency] investigatory records are confidential pursuant to R.C. 2151.421(H)(1), it appears the legislature never intended to mandate absolute confidentiality or a total bar on disclosure in some circumstances." *State v. S.R.* (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319; see, also, *Sharpe v. Sharpe* (1993), 85 Ohio App.3d 638, 641–642, 620 N.E.2d 916. In other words, "[i]t does not follow that everything contained in the [public children-services agency's file] must therefore be confidential." *State ex rel. Bell v. White* (Aug. 3, 1994), Morgan App. No. CA–93–15, 1994 WL 477795.

{¶ 36} The subject reports were both made by the Akron Police Department. We have emphasized that " '[t]he thrust of R.C. 2151.421 is directed to the [public] children services [agencies].' " *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 157, 684 N.E.2d 1239, quoting *State ex rel. Munici v. Kovacic*

(June 15, 1994), Cuyahoga App. No. 64818, 1994 WL 264265. "It is the responsibility of * * * children services [agencies] to investigate allegations of child abuse and neglect, and the reports that are mandated by R.C. 2151.421 are prepared by those social service agencies." *Strothers,* 80 Ohio St.3d at 157, 684 N.E.2d 1239.

{¶ 37} More pertinent, R.C. 2151.421 does not expressly exempt from public disclosure child-abuse investigative reports *prepared by law enforcement agencies.* Instead, the specified confidential reports in R.C. 2151.421 are made by *individuals* to either public children-services agencies or peace officers (R.C. 2151.421[A] and [B] ), by *public children-services agencies* to a central registry and a law-enforcement agency (R.C. 2151.421[F][2] ), and by *public children-services agencies* to the county prosecuting attorney or city director of law (R.C. 2151.421[F][2] ). R.C. 2151.421(H).

{¶ 38} Consequently, as the court of appeals held in *Munici,* Cuyahoga App. No. 64818, 1994 WL 264265, police investigatory reports are generally not confidential child-abuse investigatory reports:

{¶ 39} "[R.C. 2151.421] is not generally directed to law enforcement agencies. Except for the initial report [of known or suspected child abuse,] which may be made to local peace officers, the reports governed by this statute are prepared by those social service agencies. In fact, the local peace officers are required to refer the incident of child abuse to the social service agency, which then has the responsibility to investigate. The statute is silent on police investigations. Thus, the statutory scheme strongly indicates that police investigatory reports are not governed by R.C. 2151.421."

{¶ 40} Nor does the city's and the police chief's reliance on the memorandum of understanding between SCCSB and Police Chief Matulavich warrant a different result. Although R.C. 2151.421(F)(1) specifies that a public children-services agency's investigation of reported child abuse or neglect "shall be made in cooperation with the law enforcement agency and in accordance with the memorandum of understanding prepared under [R.C. 2151.421(J) ]," it ultimately places the sole responsibility on the public children-services agency to make the report and recommendations for purposes of the statute. R.C. 2151.421(F)(1) and (2). "The authority and responsibility to conduct such investigations and to submit the necessary reports are vested solely in the * * * children services [agency], in cooperation with law enforcement agencies. * * * *This responsibility may not be delegated to another agency,* whether that agency be public or private." (Emphasis added.) *Brodie v. Summit Cty. Children Services Bd.* (1990), 51 Ohio St.3d 112, 117, 554 N.E.2d 1301.

{¶ 41} Given its duty to liberally construe R.C. 149.43 in favor of access to public records and to narrowly construe exceptions to disclosure, the court of appeals correctly held, "Neither the language of [R.C. 2151.421(J), relating to

memoranda of understanding] nor the underlying purpose supports [the] argument that reports prepared pursuant to the memorandum must be kept confidential." A contrary conclusion would permit parties to a memorandum to extend the confidentiality provision of R.C. 2151.421(H)(1) to any report.

{¶ 42} Thus, R.C. 2151.421(H)(1) does not exempt the Sherman–Vaughn-incident and Corice–Street-rape reports from disclosure under R.C. 149.43 merely because they are reports of child abuse prepared by law-enforcement officers pursuant to a memorandum of understanding.

{¶ 43} But this analysis does not end our inquiry into the applicability of the child-abuse reporting statute's exemption. R.C. 2151.421(H)(2) also makes the *contents* of the reports specified in that statute confidential: "No person shall permit or encourage the unauthorized dissemination of the contents of any report made under this section." See, also, Ohio Adm.Code Section 5101:2–34–38 ("Each report and investigation of alleged child abuse or neglect is confidential and may be shared only when dissemination is authorized by this rule"); cf. *Walters v. Enrichment Ctr. of Wishing Well, Inc.* (1999), 133 Ohio App.3d 66, 73, 726 N.E.2d 1058 ("The clear language of R.C. 2151.421 mandates that not only are the reports of known or suspected abuse protected against use in civil litigation, but so also is the information contained within the reports"). Under R.C. 2151.99, a violation of R.C. 2151.421(H)(2) is a misdemeanor of the fourth degree.

{¶ 44} The reports made to SCCSB about the Sherman–Vaughn incident and to the Akron Police about the Corice Street rape by persons knowing about the child abuse in those cases were reports under R.C. 2151.421(A), which were entitled to confidentiality under R.C. 2151.421(H). To the extent that the police reports concerning these incidents referred to these initial reports, the city and its police chief were entitled to redact those portions of the reports. See *Munici,* Cuyahoga App. No. 64818, 1994 WL 264265, * 9 ("Generally releasing the disputed [police criminal investigatory records] will not compromise the goal of encouraging the reporting of child abuse, because R.C. 2151.421 does this primarily through classifying the initial report and its grant of immunity. *To the extent that the disputed records undoubtedly refer to the initial report or to other specific reports required by R.C. 2151.421 they will be redacted*"). (Emphasis added.)

{¶ 45} Therefore, the reports are reports of abuse that are not automatically entitled to the confidentiality provided by R.C. 2151.421(H) because they are not reports specified in that statute. But insofar as these reports refer to the initial reports specified in R.C. 2151.421(A) and (B), Akron and Police Chief Matulavich would generally be entitled to delete those references. *Munici.* The court of appeals erred in holding otherwise.

Constitutional Right of Privacy

{¶ 46} The court of appeals confined its analysis to "whether disclosure of the records at issue is prohibited by R.C. 2151.42[1](H)(1) in conjunction with [R.C.] 2151.421(J)" because the city and its police chief "raise no other exemption to public records disclosure requirements."

{¶ 47} The court of appeals erred in concluding that the city and its police chief relied only on R.C. 2151.421 in support of withholding the records from disclosure. Akron and Police Chief Matulavich expressly claimed that the requested records were also properly withheld under the constitutional right of privacy in their motion for summary judgment and reply brief in the court of appeals. And because the court of appeals held that the statutory exemption did not apply, it should have addressed the constitutional issue.

{¶ 48} Nevertheless, because we have now held that R.C. 2151.421(H) excepted the pertinent personal information concerning the abused children from disclosure, we need not address the constitutional issue. " 'Courts decide constitutional issues only when absolutely necessary.' " See *State ex rel. Essig v. Blackwell*, 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34, quoting *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114.

Applicability of Exemption: Sherman–Vaughn Incident

{¶ 49} The city and its police chief provided the Beacon Journal and its reporter a copy of the police department's internal-affairs investigative report on the Sherman–Vaughn incident except for certain identifying information concerning the child and his mother and the initial report of abuse under R.C. 2151.421.

{¶ 50} Although we have held that in the absence of applicable exemptions, records of police internal-affairs investigations are public records subject to disclosure under R.C. 149.43, those cases did not involve a viable exemption. Cf. *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 648 N.E.2d 808.

{¶ 51} Therefore, Akron and Police Chief Matulavich properly denied the Beacon Journal's and Warsmith's access to the deleted information in the Sherman–Vaughn–incident report, which was excepted from disclosure by R.C. 2151.421(H).

Applicability of Exemption: Corice Street Rape

{¶ 52} The city and its police chief did not provide the Beacon Journal and its reporter access to the police incident report regarding the Corice Street rape. The R.C. 2151.421(H) child-abuse-investigative-report exemption would normally exempt at least the identifying information concerning the abused child and her parents. This exemption would not necessarily apply, however, to the general

report concerning the rape, its general location, and the description of the perpetrators.

{¶ 53} This construction of the R.C. 2151.421 child-abuse-investigative-report exemption is consistent with the abused child's mother's interest in publicizing the general facts concerning the rape to alert people in the neighborhood and help apprehend the perpetrators while simultaneously safeguarding the child's identity. This conclusion serves the two preeminent purposes of R.C. 2151.421: to facilitate the protection of abused and neglected children and to determine the person or persons responsible for the abuse or neglect. *Yates,* 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, ¶ 25.

{¶ 54} The court of appeals noted in dicta that even if the Corice–Street-rape report contained information that would normally be exempt from disclosure under R.C. 149.43, the Akron Police Department's incorporation of this information into an offense-and-incident report, which is a public record, negated the applicability of any exemption. The court of appeals relied on *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 378, 662 N.E.2d 334, and *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 57, 741 N.E.2d 511, in so concluding.

{¶ 55} These cases, however, are inapposite. *Cincinnati Enquirer* involved 911 tapes, which are not at issue here. And in *Maurer,* we did not adopt a per se rule that all police offense-and-incident reports are subject to disclosure notwithstanding the applicability of any exemption. In *Maurer,* 91 Ohio St.3d at 56–57, 741 N.E.2d 511, we merely held that a police incident report did not constitute a confidential law-enforcement investigatory record and instead was a public record under the facts of that case. Therefore, although police offense-and-incident reports are generally subject to disclosure, documents containing information that is exempt under state or federal law may be redacted.

{¶ 56} Based on the foregoing, the court of appeals erred in granting the writ of mandamus to compel Akron and Police Chief Matulavich to provide access to an unredacted copy of the Corice–Street-rape report. The city and its police chief can properly redact the documents to eliminate the personal information concerning the child rape victim and her parents based on R.C. 2151.421(H).

### Court of Appeals Mandamus Decision

{¶ 57} Based on the foregoing, the court of appeals erred in granting the writ of mandamus relating to the Sherman–Vaughn–incident report. The court of appeals also erred in granting the writ of mandamus relating to the Corice–Street-rape report insofar as the report contained exempt personal information concerning the child victim and her parents.

Attorney Fees

{¶ 58} The court of appeals awarded attorney fees for the mandamus claim on the Sherman–Vaughn–incident report and denied attorney fees for the comparable claim on the Corice–Street-rape report.

{¶ 59} An award of attorney fees under R.C. 149.43 is not mandatory. *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. "In an appeal of a judgment granting or denying fees in a public records case, we review whether the court abused its discretion." *State ex rel. Dillery v. Icsman* (2001), 92 Ohio St.3d 312, 314, 750 N.E.2d 156. An abuse of discretion means an unreasonable, arbitrary, or unconscionable action. *State ex rel. Hamilton Cty. Bd. of Commrs. v. State Emp. Relations Bd.*, 102 Ohio St.3d 344, 2004-Ohio-3122, 810 N.E.2d 949, ¶ 17. In exercising its discretion, a court considers the reasonableness of the government's failure to comply with the public-records request and the degree to which the public will benefit from release of the records in question. *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 47.

{¶ 60} Regarding the Sherman–Vaughn–incident report, because the request for an unredacted copy lacked merit, the court of appeals abused its discretion in awarding attorney fees on the mandamus claim related to that report. See *Dillery*, 92 Ohio St.3d at 315, 750 N.E.2d 156 ("Since [the] general [records] request was improper, the court of appeals abused its discretion in awarding attorney fees related to that request").

{¶ 61} For the Corice–Street-rape report, to the extent that the report includes information protected by R.C. 2151.421(H), the court of appeals did not abuse its discretion in denying the request for attorney fees. Insofar as the report contains other nonexempt information, the city and its police chief reasonably believed that disclosure of this information might subject them to criminal liability under R.C. 2151.99. Cases like *Munici* support their position in part. And they were genuinely concerned that disclosure might deter the reporting of crimes concerning abused children.

{¶ 62} Furthermore, the vast majority of the requested fees related to the work done by the Beacon Journal's in-house counsel. There is no evidence or suggestion that the Beacon Journal either paid or was obligated to pay its in-house counsel attorney fees in addition to her regular salary and benefits for the work she did in representing the Beacon Journal and Warsmith on their mandamus claim. Consequently, these "fees" are not recoverable in a mandamus action under R.C. 149.43. See, e.g., *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 175, 724 N.E.2d 411 ("The board is also not entitled to attorney fees because * * * there is no evidence that the board paid any attorney fees to its counsel"); *State ex rel.*

*Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 542, 721 N.E.2d 1044 ("There is, however, no evidence or argument that Susan Besser actually paid or is obligated to pay attorney fees to her husband for his representation of her in this case"); *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1998), 81 Ohio St.3d 1234, 1235, 690 N.E.2d 11 ("the party against whom an award of fees is assessed should be responsible for those fees incurred only as a direct result of that party's failure to produce the public record").

{¶ 63} Therefore, the court of appeals should have denied the entire request for attorney fees.

## Conclusion

{¶ 64} Based on the foregoing, we reverse that portion of the court of appeals judgment granting the writ of mandamus to compel disclosure of the unredacted Sherman–Vaughn–incident report and that portion of the judgment granting in part the request for attorney fees. We also reverse that part of the court of appeals judgment granting the writ of mandamus to compel disclosure of the exempt personal information contained in the Corice–Street-rape report, which can be properly redacted as confidential information under R.C. 2151.421(H). We affirm the part of the court of appeals judgment granting the writ of mandamus to compel disclosure of the nonexempt information in the Corice–Street-rape report and denying the request for attorney fees related to the request for that report.

Judgment affirmed in part
and reversed in part.

Moyer, C.J., Resnick, F.E. Sweeney, Pfeifer, Lundberg Stratton, O'Connor and O'Donnell, JJ., concur.

---

Karen C. Lefton and Edward G. Kemp, for appellees and cross-appellants.

Max Rothal, Akron Law Director, and Deborah M. Forfia, Assistant Law Director, for appellants and cross-appellees.