[Cite as *State v. Neal*, 2016-Ohio-332.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-14-1221

    Appellee                                      Trial Court No. CR0201401582

v.

Clay E. Neal                                          **DECISION AND JUDGMENT**

    Appellant                                     Decided:  January 29, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1} This is an appeal from a conviction for menacing by stalking, in violation of

R.C. 2903.211, in the Lucas County Court of Common Pleas.  Appellant, Clay Neal, was

sentenced to 17 months in prison following his conviction.

## A. Facts

**{¶ 2}** This dispute surrounds the relationship appellant has with his estranged wife, Rebecca Neal. The two married in February 2012. The couple had three children during the course of their decade long relationship. Appellant and his estranged wife ceased living together in July 2012. Appellant's conviction for menacing by stalking stems from incidents that occurred between March 8 and 31, 2014.

**{¶ 3}** On March 8, 2014, Toledo Police Officer Todd Babcock was dispatched to Rebecca's home for a call of domestic disturbance at 3:00 a.m. Upon arriving at the scene, Officer Babcock saw appellant walking down the road near Rebecca's home. Appellant seemed dazed and Officer Babcock suspected he was involved in the domestic disturbance at Rebecca's home. Officer Babcock testified that he saw appellant was slightly injured and had some blood on him. Appellant told Officer Babcock he was currently residing at Rebecca's home but the two were getting a divorce. Officer Babcock testified he believed Rebecca was fearful of appellant that morning when he interviewed her.

**{¶ 4}** The domestic disturbance involved an altercation between appellant and Rebecca's current boyfriend, Kenneth Vawters. That night, Rebecca and Vawters returned to Rebecca's home, where appellant was waiting on Rebecca's front porch. Upon seeing appellant, Rebecca exited the vehicle and Vawters began to back out of the driveway. Appellant then began hitting Vawters' vehicle with his fist, at which point Vawters exited his vehicle and began wrestling on the ground with appellant. At some

2.

point during the altercation, appellant sprayed mace which affected Rebecca, Vawters, and appellant.

{¶ 5} After interviewing Rebecca and appellant, Officer Babcock took the house key appellant still had for Rebecca's house. The key opened one of the locks on the back door to Rebecca's house. The key was returned to Rebecca and Officer Babcock retrieved appellant's coat and phone from the premises. Vawters did not make a statement to Officer Babcock that night as he was in the bathroom rinsing his eyes from the pepper spray.

{¶ 6} On the same day around 10:30 a.m., Toledo Police Officer George Roush was dispatched to Rebecca's home. Rebecca called the police because appellant was ramming his vehicle into the garage door of Rebecca's home. Officer Roush noticed damage to the garage door and that there were bumper prints on the door. Officer Roush found Rebecca was very fearful and emotional when he responded to the residence. Rebecca would later testify that appellant's actions that morning made her very fearful because the couple's children would play frequently in the garage. She stated that this made her fearful for her life because appellant was aware their children would play in the garage and by ramming his vehicle into the garage, he was putting their lives in danger.

{¶ 7} From March 8 through March 16, 2014, several text messages were exchanged between appellant and Rebecca, some of which Rebecca found threatening. On March 8, 2014, appellant sent a text message to Rebecca saying, "Hope all your lies & deciet was worth it!, u playing wit fire like im stupid." On March 14, 2014, appellant

3.

sent Rebecca a text message stating, "This shit real ma nigga, im trying to keep my teeth in my mouth, but u playing wit fire like im stupid." Three days later, appellant sent Rebecca two text messages, which Rebecca found the most threatening. The first text message stated, "Run, but wat comes around goes around." The second message stated, "Aint no fun wen the rabbit got the gun."

{¶ 8} On March 18, 2014, Rebecca returned to her home to find appellant exiting her garage. The two went to a nearby park where Rebecca recorded their conversation with the camera on her cell phone. This recording was presented to the jury. During the video, appellant does not deny breaking into Rebecca's home or destroying her property. At several points in the recording, Rebecca told appellant that he was making her afraid of him. The couple attempted to come to an agreement about how to communicate with each other in a peaceful manner.

{¶ 9} On March 25, 2014, Rebecca returned to her home to find her personal belongings, including her mattress, were strewn across the front yard of her home. Rebecca told the responding officer, Toledo Police Officer Aaron James, that she believed appellant had broken into her home and moved her possessions onto the front lawn. She believed this to be the case due to text messages she had received from appellant earlier in the day. Rebecca testified that she received a text message from appellant warning her there would be consequences for not answering her phone when he was trying to reach her. The only text messages that appeared in the phone records from appellant to Rebecca was asking why Rebecca was not answering her phone.

4.

**{¶ 10}** Following this incident, Rebecca filed for a civil protection order against appellant on March 25, 2014. The civil protection order was served on appellant on March 31, 2014. Rebecca let the protection order lapse by failing to appear. She testified that she let the order lapse because she could not leave work and appellant was incarcerated so she no longer feared for her life.

**{¶ 11}** On March 31, 2014, Toledo Police Officer Joseph Petro responded to a call at Vawters' residence at 3:00 a.m. Rebecca testified that she received a text message from appellant telling her she needed to leave the place she was currently located. This text message was not in the phone records Rebecca provided to the police. Vawters and Rebecca were watching television with her children when they heard a loud thud at the front door. Shortly after, a loud crashing noise came from the front door. Vawters went to investigate the noises and saw his front storm door had been shattered. Vawters testified that he saw appellant in the immediate area following the loud crashing noise. A brick and a rock were found near the door. A charge for menacing by stalking was brought against appellant.

## B. Procedural History

**{¶ 12}** During the ensuing trial, the prosecution entered into evidence the phone records from a phone Rebecca gave Detective Mary Jo Jaggers. The phone records contained all of the text messages and phone calls Rebecca received or sent during the period of March 8 through 31, 2014. The prosecution redacted these phone records to only show the texts and calls between appellant and Rebecca. Defense counsel objected

5.

to the entering of the redacted phone records. The objection was overruled due to the prosecution successfully arguing that defense counsel wanted the unredacted records to attack the character of Rebecca. The trial court found the probative value was substantially outweighed by substantial prejudice.

{¶ 13} The phone records show Rebecca was involved romantically with people who were not her husband. Defense specifically wanted several text messages Rebecca sent to her friends about appellant. This conversation took place on March 24, 2014. Within that conversation, Rebecca stated, "He do this shit every Saturday. And he think marriage go work I think NOT." She also tells her friend, "He think because he bought that ring everything is good. I don't even wear it and he can't seem to figure out why." To another friend, Rebecca says, "I dnt even use that man last name..smh,,im not into appearences..he be mad ass hell too..lol." Defense counsel objected to the entry of the redacted phone records before trial and during the trial. Defense counsel also proffered the unredacted phone records into the record at trial. They were not admitted by the trial court.

{¶ 14} At trial, defense counsel spent a large amount of time on his cross-examination of Rebecca asking her about the text messages. During this cross-examination, Rebecca admitted she had another cell phone which she did not give to the police. Officer Jaggers testified that there was a landline at Rebecca's home which the police also did not retrieve records from. Rebecca testified that on March 8, 2014, she received several harassing phone calls from appellant, but these calls were not on the

6.

phone records entered into evidence. The phone records also showed that Rebecca called appellant on several occasions, up to ten times in a row. The records evidenced that Rebecca, at times, started several of the conversations between the two. Rebecca testified that she did not have a day of peace from appellant, either in phone calls, text messages, or personal contact.

## II.  Analysis

### A.  Assignments of Error

{¶ 15} Appellant brings four assignments of error for our review:

1.  The trial court erred by not allowing the unredacted phone records of the victim's phone to be used at trial.

2.  Appellant received ineffective assistance of counsel as trial counsel failed to attempt to utilize the unredacted phone records for cross-examination of the victim.

3.  The state failed to provide legally sufficient evidence to sustain a conviction for menacing by stalking.

4.  Appellant's conviction for menacing by stalking fell against the manifest weight of the evidence.

### B.  Redacted Phone Records Entered into Evidence

{¶ 16} Appellant first contends the trial court abused its discretion when it allowed the prosecution to enter redacted phone records into evidence. Decisions surrounding the admissibility of evidence are reviewed for an abuse of discretion. *Estate of Johnson v.*

7.

*Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22, citing

*State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. A trial court's

action must be unreasonable, arbitrary, or unconscionable to constitute an abuse of

discretion. *Id.*, citing *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio

St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 59.

{¶ 17} To satisfy the elements of menacing by stalking under R.C. 2903.211, the

prosecution must prove that the defendant knowingly caused the victim to believe he or

she is in danger of physical harm or mental distress. For evidence to be admitted, the

evidence must first be relevant. Evid.R. 401. To be relevant, a piece of evidence must

make a fact more or less probable to be true. *Id.* Relevant evidence may be ruled

inadmissible at the discretion of the trial court if the probative value of the evidence is

substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A).

{¶ 18} We find the probative value of the unredacted phone records was

substantially outweighed by their prejudicial effect. The unredacted phone records

contained information which showed Rebecca was maintaining relationships with people

who were not her husband. The prejudicial value of showing the infidelity of Rebecca far

outweighed the probative value appellant was attempting to show with the entirety of the

phone records. The ability to show Rebecca did not text message anyone about the

harassment is far outweighed by the prejudicial effect of the rest of her conversations.

We, therefore, find the trial court did not abuse its discretion and find appellant's first

assignment of error not well-taken.

8.

### C. Ineffective Assistance of Counsel

{¶ 19} Appellant next argues trial counsel provided ineffective assistance of counsel because counsel failed to propose redacting the records pertaining to Rebecca's other relationships. In order to prove ineffective assistance of counsel, appellant must show defense counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the results of the trial would have been different. *Strickland v. Washington*, 466 U.S. 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, a properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel." *State v. Campbell*, 6th Dist. Lucas No. L-05-1284, 2006-Ohio-4435, ¶ 20, citing *State v. Phillips*, 74 Ohio St.3d 72, 85-88, 656 N.E.2d 643 (1995).

{¶ 20} Appellant argues his counsel was ineffective when counsel failed to request only those text messages relating to Rebecca's other relationships be redacted. Appellant argues his trial counsel was ineffective because counsel failed to attempt to cross-examine Rebecca about the unredacted version of the phone records, despite the trial court's ruling the unredacted records were inadmissible.

{¶ 21} We do not find that either of these actions falls below an objective standard of reasonableness. Trial counsel spent three to four hours cross-examining Rebecca and a large amount of that cross-examination surrounded her text messages and her conversations with appellant. During that cross-examination, trial counsel effectively

9.

questioned Rebecca about a second phone she used, for which records were not given to police. Counsel also elicited testimony establishing that several of Rebecca's statements were not supported by the redacted phone records, and that she on several occasions called appellant multiple times in a row. All of these statements could have affected Rebecca's credibility as a witness to the jury. Defense counsel's cross-examination was more than thorough and cannot be seen as ineffective just because appellate counsel would have questioned Rebecca differently or asked different questions. Defense counsel also attempted to enter the unredacted phone records into evidence.

{¶ 22} We also do not find that trial counsel's handling of the redaction of the phone records rises to the level of ineffective assistance of counsel. Appellant argues the conversation Rebecca had with her friend on March 24, 2014, should have been entered into evidence and would have changed the entire evidentiary picture. We do not find there was a reasonable probability that if these records were entered into evidence the result of the proceeding would have been different.

{¶ 23} If the other text messages had been entered into evidence, trial counsel would have simply been able to ask if she spoke with anyone else about the alleged harassment by appellant. We do not find that there is a reasonable probability this question would have changed the reliability or credibility of Rebecca as a witness or her testimony. Defense counsel was very effective in cross-examination and attempted impeachment of Rebecca based on the records admitted into evidence.

10.

**{¶ 24}** We do not find there was a sufficient probability to undermine the confidence of the outcome at the trial court level and find appellant's second assignment of error not well-taken.

### D.  Insufficient Evidence

**{¶ 25}** Appellant's third assignment of error contends the state supplied insufficient evidence to support appellant's conviction for menacing by stalking.  When reviewing if the state provided legally sufficient evidence to support a conviction, an appellate court must examine all of the evidence admitted at trial and determine whether the evidence, if believed by the trier of fact, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶ 26}** R.C. 2903.211 prohibits anyone from "engaging in a pattern of conduct" which knowingly causes the victim to believe the offender will cause physical harm or mental distress to the victim.  The charge is increased from a first degree misdemeanor to a fourth degree felony if there is a history of violence toward the victim, the offender trespassed on the land or premises where the victim lives, or the offender made a threat of physical harm against the victim.  R.C. 2903.211(B)(2).  The state presented sufficient evidence to convince the average mind of appellant's guilt beyond a reasonable doubt.

11.

{¶ 27} A pattern of conduct under the section is "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). The prosecution showed there was a pattern of conduct between appellant and Rebecca. The state used police reports and testimony of the responding officers to show that at least four incidents took place between the couple in less than a month. In the span of 23 days, appellant got into a fight with Kenneth Vawters on Rebecca's property, rammed his car into Rebecca's garage, led Rebecca to believe he broke into her home for failing to respond to his text messages, and threw a brick through the window of Vawters' front door. Thus, the state provided sufficient evidence to show a pattern of conduct beyond a reasonable doubt.

{¶ 28} The state also showed appellant knowingly caused Rebecca to believe she was in danger of physical harm. A person acts knowingly "when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Appellant was aware his actions would probably lead Rebecca to believe that she was in danger of physical harm or the messages were threatening in nature. Rebecca told appellant herself she was afraid of him several times during the conversation Rebecca recorded between appellant and herself. Five witnesses also testified she was afraid of appellant. Thus, the state presented sufficient evidence to convince the average mind appellant knowingly caused Rebecca to believe she was in danger of physical harm.

{¶ 29} Finally, the state provided sufficient evidence to convince an average mind that there was a history of violence between appellant and Rebecca through the testimony

12.

of Rebecca.  Appellant argues that this testimony is uncorroborated.  However, trial counsel cross-examined Rebecca and asked specific questions about her credibility.  Counsel pointed to parts of Rebecca's testimony that were not corroborated by the supplied phone records.  The jury believed Rebecca's testimony despite these gaps in her testimony.  When viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to be proven beyond a reasonable doubt.  We, therefore, find appellant's third assignment of error not well-taken.

### E.  Manifest Weight of Evidence

{¶ 30} Appellant contends in his final assignment of error that his conviction fell against the manifest weight of the evidence.  When reviewing a decision based on a manifest weight argument, an "appellate court sits as a thirteenth juror and disagrees with the fact finder's resolution of the conflicting testimony."  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).  The court reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses.  *Tibbs* at 42.  The court then determines whether in resolving the conflicts in the evidence, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *Id*.  A new trial must only be granted "in the exceptional case in which the evidence weighs heavily against the conviction."  *Id*.  "A reviewing court will not reverse a jury verdict where there is

13.

substantial evidence upon which a jury could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt." *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1979), syllabus.

{¶ 31} We do not find the jury lost its way and created a miscarriage of justice when it convicted appellant of menacing by stalking. The state provided substantial evidence for the jury to conclude appellant was guilty of menacing by stalking beyond a reasonable doubt. Rebecca testified to the conversations, text messages, and other interactions between appellant and Rebecca. Rebecca was cross-examined by defense counsel for several hours surrounding these communications and, despite any issues with her testimony, the jury found Rebecca to be a credible witness and convicted appellant.

{¶ 32} The state also introduced several police reports of incidents between Rebecca and appellant. At least one of the incidents involved an altercation between appellant and Vawters and two of the police reports involved property damage that appellant caused. During the conversation that Rebecca recorded on her cellphone, appellant did not deny committing these actions and agreed to stop harassing Rebecca. Based on this record, we find the jury's verdict was not against the manifest weight of the evidence. Consequently, appellant's fourth assignment of error is not well-taken.

### {¶ 33} III.  Conclusion

{¶ 34} Based on the foregoing reasons, we affirm the decision of the Lucas County Court of Common Pleas. Costs assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                             

_____

JUDGE

Thomas J. Osowik, J.                     

_____

JUDGE

Stephen A. Yarbrough, J.             
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.