The STATE OF OHIO ex rel. CINCINNATI ENQUIRER

v.

HEATH, Judge, et al.

[Cite as *State ex rel. Cincinnati Enquirer v. Health,*
183 Ohio App.3d 274, 2009-Ohio-3415.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2008–03–046.

Decided July 13, 2009.

Graydon Head & Ritchey L.L.P., and John C. Greiner, for relator.

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Keith W. Anderson, Assistant Prosecuting Attorney, for respondents.

Young, Judge.

{¶ 1} The above cause is before this court pursuant to a writ of mandamus to compel two Warren County Common Pleas Court judges to vacate orders sealing

certain records in the criminal case of *State v. Veillette,* Warren C.P. No. 08 CR 24789, and to make the records available for inspection and copying in accordance with R.C. 149.43, Ohio's Public Records Act. Relator, the Cincinnati Enquirer, a division of Gannett Satellite Information Network, Inc. ("Enquirer"), operates and does business as the Cincinnati Enquirer, a newspaper of general circulation in Cincinnati, Ohio. Respondents are Warren County Common Pleas Court Judge Neal Bronson and the late Judge James Heath of the Warren County Common Pleas Court.[1]

{¶ 2} Michel Veillette was arrested in January 2008 and was accused of murdering his wife and their four children in their Mason, Ohio home. On January 22, 2008, Veillette appeared in the Mason Municipal Court for a preliminary hearing that was open to the public. At the hearing, the state introduced several exhibits, including Veillette's taped statement, crime-scene photographs, and a diagram of the crime scene.

{¶ 3} On January 17, 2008, Mason Municipal Court Judge Andrew Batsche sealed the search warrant and related items in connection with the criminal investigation. On January 28, 2008, Judge Bronson granted a motion by the state and sealed the records in Veillette's criminal case "bound over from Mason Municipal Court." On February 13, 2008, Judge Batsche granted a motion by the Mason City Prosecutor and sealed all records involving Veillette, including the records from the preliminary hearing.

{¶ 4} Thereafter, the Enquirer requested that the February 13, 2008 sealing order of Judge Batsche be vacated. On March 25, 2008, Judge Heath held a hearing to determine whether the records from the preliminary hearing should remain sealed. At the hearing, the state argued, "[T]here may be a substantial probability that [Veillette] would be deprived of a fair trial by disclosure of the information that was presented at the preliminary hearing." Veillette joined in the state's motion. At the conclusion of the hearing, Judge Heath decided that the materials should remain sealed, stating:

{¶ 5} "In light of the interests of the Defendant, those being primary at this point in time, the fact that this information potentially could taint the jury pool, in order to protect his due process rights, I think it is appropriate that the information remain sealed."

---

1. On June 3, 2009, the Warren County Prosecutor's Office filed a suggestion of death within 14 days of Judge Heath's death pursuant to Civ.R. 25(E). Pursuant to Civ.R. 25(D), we take judicial notice of Judge Heath's death and proceed under the premise that when a public officer who is a party to an action in his official capacity dies while the action is pending, "the action does not abate and his successor is automatically substituted as a party." See *State ex rel. Strauss v. Celebrezze,* Cuyahoga App. No. 92369, 2009-Ohio-370, 2009 WL 212103.

{¶ 6} A few days later, the Enquirer filed a complaint in this court for a writ of mandamus to compel Judge Heath, Judge Bronson, and Judge Batsche to vacate their orders sealing the records relating to Veillette's criminal case and to provide the records for inspection and copying. The Enquirer also requested an award of attorney fees. The Enquirer later voluntarily dismissed Judge Batsche from the case. Claims against Judge Heath and Judge Bronson remained pending.

{¶ 7} On April 15, 2008, Veillette committed suicide in his Warren County jail cell. In light of Veillette's death, Judge Heath ordered that the previous order sealing the records from the preliminary hearing be lifted. Judge Heath and Judge Bronson then moved to dismiss the Enquirer's complaint for a writ of mandamus on the ground of mootness. By entry filed on June 4, 2008, this court granted the motion and dismissed the cause, and denied the Enquirer's request for attorney fees. We found that the mandamus claim was moot because the Enquirer had been provided with the requested records following Veillette's suicide, which was less than a month after Judge Heath's March 25 hearing. The Enquirer appealed this court's entry to the Ohio Supreme Court.

{¶ 8} On February 18, 2009, the Ohio Supreme Court reversed and remanded this court's dismissal of the Enquirer's complaint for a writ of mandamus and the denial of the Enquirer's request for attorney fees:

{¶ 9} "[O]rders refusing the release of a transcript of a preliminary hearing in a criminal case are not rendered moot by the subsequent release of the transcript, because '[i]t can reasonably be assumed that [members of the news media] will be subjected to a similar closure order and, because criminal proceedings are typically of short duration, such an order will likely evade review.' *Press–Ent. Co. v. Superior Court of California for Riverside Cty.* (1986), 478 U.S. 1, 6, 106 S.Ct. 2735, 92 L.Ed.2d 1; * * * Therefore, * * * the mere fact that Veillette's suicide led to Judge Heath's lifting of the sealing order did not render the Enquirer's mandamus claim moot. * * * In addition, even if the Enquirer's mandamus claim were properly dismissed as moot, a claim for attorney fees in a public-records mandamus action is not rendered moot by the provision of the requested records after the case has been filed." *State ex rel. Cincinnati Enquirer v. Heath,* 121 Ohio St.3d 165, 2009-Ohio-590, 902 N.E.2d 976, ¶ 13–14, 18.

{¶ 10} On remand, the Enquirer argues that it is entitled to a writ of mandamus because the requested records are public records and mandamus is the appropriate remedy for a violation of R.C. 149.43. Specifically, the Enquirer asserts that respondents improperly failed to engage in a meaningful balancing analysis before denying its request for records, citing *State ex rel. Beacon Journal Publishing Co. v. Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, in support. It is not disputed that the requested records are public records.

{¶ 11} To prevail on a petition for a writ of mandamus, relator must establish (1) a clear legal right to the relief requested, (2) that respondents have a clear legal duty to perform the act or acts requested, and (3) that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128. Mandamus is the appropriate remedy to seek compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23. The Public Records Act " 'must be construed liberally in favor of broad access, and any doubt should be resolved in favor of disclosure of public records.' " *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 8, quoting *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 156, 684 N.E.2d 1239.

{¶ 12} In *Bond*, a newspaper submitted an informal request to the trial court, seeking production of the jury questionnaires and the list of juror names and addresses in connection with an ongoing capital murder trial. The trial court denied the request, and the newspaper filed a petition for a writ of mandamus to compel the trial court to release the requested records. The Ohio Supreme Court found that juror names, addresses, and questionnaire responses were not public records under R.C. 149.43; however, juror questionnaires without responses were public records for purposes of R.C. 149.43. The Supreme Court granted the writ of mandamus as to juror questionnaires without responses.

{¶ 13} The Supreme Court first recognized "the well-settled principle that the First Amendment to the United States Constitution guarantees the public and press a coextensive right of access to criminal proceedings that have 'historically been open to the press and general public' and in which 'public access plays a significant positive role in the functioning of the particular process in question.' " *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 15. The right of public access, however, is not absolute; the "presumption of openness * * * may be overcome 'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " Id. at ¶ 17. The Supreme Court then addressed whether the justifications given by the trial court to seal the records, namely protecting juror privacy and preserving the right of the accused to a fair trial, rebutted the presumption of openness.

{¶ 14} The Supreme Court held that "the privacy interests of the prospective jurors, as articulated by the trial court, were not sufficiently compelling to rebut the presumption of openness. The trial court neither articulated particularized findings regarding the privacy interests of jurors nor considered alternatives to the total suppression of the questionnaires." *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 22.

{¶ 15} The Supreme Court further found that the presumption of openness was not rebutted by virtue of the defendant's Sixth Amendment right to a fair trial. The Supreme Court first noted that "[i]n drawing the proper balance between the Sixth Amendment right to a fair trial and the First Amendment right of access, the [United States Supreme Court] set forth a two-part inquiry to determine whether the presumption of openness has been rebutted:

{¶ 16} " 'If the interest asserted is the right of the accused to a fair trial, the * * * hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.' " Id. at ¶ 28–29, quoting Press–Ent. Co. v. Superior Court, 478 U.S. at 14, 106 S.Ct. 2735, 92 L.Ed.2d 1.

{¶ 17} Applying the two-part inquiry to the case before it, the Supreme Court then required trial courts to "(1) make specific findings, on the record, demonstrating that there is a substantial probability that the defendant would be deprived of a fair trial by the disclosure of the questionnaires and (2) consider whether alternatives to total suppression of the questionnaires would have protected the interest of the accused." Bond, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 30. Upon finding that the record was void of specific findings of prejudice or any consideration of less-restrictive alternatives, the Supreme Court held that the defendant's right to a fair trial did not rebut the presumption of openness. Id. at ¶ 31. Having determined that the trial court's sealing order was unconstitutional, the Supreme Court granted the writ of mandamus. Id. at ¶ 48, 50.

{¶ 18} Applying the foregoing analytic framework to the case at bar, we find that respondents improperly ordered the preliminary hearing records to remain sealed and thus improperly denied the Enquirer's records request.

{¶ 19} The records requested by the Enquirer were submitted at Veillette's January 22, 2008 preliminary hearing, which was open to the public. At the March 25, 2008 hearing, the state asserted, without presenting evidence, that "there may be a substantial probability that [Veillette] would be deprived of a fair trial by disclosure of the information that was presented at the preliminary hearing." Veillette's attorney joined in the state's motion, stating: "[W]e would agree with the prosecuting attorney's contention that Mr. Veillette's right to a fair trial is indeed, we believe, infringed by the publication of these documents, the photographs, the diagrams, what have you." Based on the foregoing assertions, Judge Heath then summarily ordered that the records remain sealed given "the fact that this information potentially could taint the jury pool."

■ {¶ 20} As in the *Bond* case, the record in the case at bar is absolutely devoid of any specific findings of prejudice or any consideration of less-restrictive alternatives. Before ordering the records to remain sealed, respondents did not articulate particularized findings regarding how Veillette would be prejudiced or deprived of a fair trial by the disclosure of the requested records. While Judge Heath referred to the fact that the records could potentially taint the jury pool, he did not elaborate how. Further, respondents never considered whether and what alternatives to the total suppression of the requested records existed. The presumption of openness "may be overcome 'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 17, quoting *Press–Ent. Co. v. Superior Court of California, Riverside Cty.* (1984), 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629. Such findings were lacking in the case at bar.

{¶ 21} We therefore find that the presumption of openness was not rebutted in the case at bar. The lone, unsubstantiated justification provided at the March 25 hearing was certainly not sufficiently compelling to rebut the presumption. We accordingly grant the writ of mandamus.

■■ {¶ 22} The Enquirer also requests and asserts that it is entitled to an award of attorney fees. An award of attorney fees under R.C. 149.43(C) is not mandatory. *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, ¶ 31. In granting or denying attorney fees under R.C. 149.43(C), courts consider the reasonableness of the government's failure to comply with the public-records request and the degree to which the public will benefit from release of the records in question. Id.

■ {¶ 23} The Enquirer has established a sufficient public benefit. See *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 741 N.E.2d 511; *State ex rel. Cincinnati Enquirer v. Dinkelacker* (2001), 144 Ohio App.3d 725, 761 N.E.2d 656. Further, respondents failed to comply with the Enquirer's records request for reasons that are invalid (failure to articulate particularized findings justifying noncompliance and failure to consider alternatives to the total suppression of the preliminary-hearing records). Therefore, the Enquirer is entitled to attorney fees. The Enquirer is instructed to submit documentation in support of an actual award of attorney fees within 10 days of the date of this decision. Respondents may file a responsive memorandum within 10 days thereafter.

Writ granted.

POWELL, P.J., and HENDRICKSON, J., concur.