[Cite as *State ex rel. Cincinnati Enquirer v. Sage*, 2013-Ohio-2270.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO ex rel. THE CINCINNATI ENQUIRER, | : | CASE NO. CA2012-06-122 |
| | : | |
| Relator, | : | O P I N I O N |
| | : | 6/3/2013 |
| - vs - | : | |
| | : | |
| HON. MICHAEL J. SAGE, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

ORIGINAL ACTION IN PROHIBITION AND MANDAMUS

Graydon Head & Ritchey, LLP, John C. Greiner, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, for relator

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for respondents

**M. POWELL, J.**

{¶ 1} This is a case in which relator, the Cincinnati Enquirer (the Enquirer), a newspaper of general circulation in southwestern Ohio, seeks a writ of mandamus and a writ of prohibition compelling respondents, Butler County Prosecutor Michael Gmoser and Butler County Common Pleas Judge Michael Sage, to release an audio recording of a telephone

conversation between a Butler County 911 operator and a murder suspect.[1]

## FACTUAL BACKGROUND

{¶ 2}    On June 17, 2012, the Butler County Sheriff's Office Dispatch Center received a 911 call at 4:41 p.m. (the First Call).  The female caller informed Sheriff's Office Operator Debra Rednour that her husband was hurt, there had been an accident, and her husband was not breathing.  The call then ended abruptly.  Rednour dispatched emergency personnel and placed a return call to the telephone number which made the original 911 call.  This return call was not answered (the Unanswered Call).  Rednour made a second return call (the Outbound Call).

{¶ 3}    This call was answered by a male who identified himself as Michael Ray.  Ray immediately told Rednour that he was a murderer and needed to be arrested.  Rednour asked Ray what had happened.  Ray told her that he had been caught drinking his father's beer, his father got mad at him, and he (Ray) just snapped and stabbed his father.  In response to further questioning by Rednour, Ray told her he had stabbed his father in the chest with a hunting knife, he had removed the knife from his father's chest, and the knife was now laying on Ray's bedroom floor.  The call was disconnected with the arrival of the police to the residence.

{¶ 4}    In her deposition, Rednour testified it is her duty to make a return call if a 911 call is dropped so that she can find out what is going on, and that if a weapon is involved, she will make a point to find out its type and location.  Rednour testified it was her duty to make a return call after the First Call was dropped because she did not have enough information to ensure a proper medical response and the safety of those responding to the emergency.  All she knew after the First Call was dropped was that someone was not breathing.  Rednour

---

1. Gmoser and Judge Sage will be referred collectively as respondents when necessary.

stated she had no idea that a crime had been committed when she placed the return call and that it was not her intention in making the return call to investigate a crime. Rather, the questions she asked during the Outbound Call were solely to provide for the safety of the first responders and the victim.

{¶ 5} On the day of the incident, Sheila McLaughlin, a reporter for the Enquirer, made a request to the Butler County Sheriff's Office for the recording of the First Call. Gmoser denied the request. Gmoser advised the reporter that he would not release the recording prior to the conclusion of the investigation and any trial of the matter, and that he would seek a protective order against such release. Notwithstanding Gmoser's denial, the sheriff's office released the recording of the First Call to the Enquirer on June 19, 2012. Upon receipt of the recording, the Enquirer realized there were recordings of other calls relating to the incident. Consequently, the Enquirer made a request for "all 911 calls to or from Butler County dispatchers from 4:00 p.m. June 17 until 5:30 p.m. June 17."

{¶ 6} On June 20, Gmoser denied the request on the ground the recordings of the Unanswered Call and the Outbound Call were both trial preparation records under R.C. 149.43(A)(1)(g) and confidential law enforcement investigatory records under R.C. 149.43(A)(1)(h), and therefore not public records. Gmoser further stated, "Independent of this basis for refusing your requests * * *, it is my firm belief that the interest of justice outweighs any public interest in one of the two subject recordings and I shall proceed to ask for a protective order from the court regarding release of that recording in further criminal proceedings."

{¶ 7} By letter dated June 21, 2012, the Enquirer, through its legal counsel, reiterated its request for "all 911 calls to or from Butler County dispatchers from 4:00 p.m. June 17 until 5:30 p.m. June 17." On June 22, Gmoser notified the Enquirer's legal counsel that he would release the recording of the Unanswered Call, but remained steadfast in his refusal to

release the recording of the Outbound Call. That same day, pursuant to Crim.R. 16(C), Gmoser filed a motion for protective order in the Butler County Common Pleas Court (the common pleas court) in the case of *State v. Ray*.[2] In the motion, Gmoser asserted that the Outbound Call was part of an investigation of a 911 incident report. Gmoser reasserted his claim that the Outbound Call recording was both a trial preparation record and a confidential law enforcement investigatory record, and therefore not subject to disclosure as a public record. Gmoser further stated that the recording of the Outbound Call is "so lawfully prejudicial to any theory of [Ray's] innocence" that its disclosure would endanger Ray's right to a fair trial.

{¶ 8} On June 25, a hearing was held on the motion before Judge Sage. Present at the hearing were Gmoser, the Enquirer's counsel, and Ray's criminal defense counsel. The recording of the Outbound Call was played for Judge Sage in his chamber in the presence of Gmoser, the Enquirer's counsel, and Ray's counsel. The recording was neither offered nor received into evidence. Following this in camera hearing, the parties argued the motion in open court without the submission of additional evidence. Following argument, Judge Sage orally granted the protective order from the bench.

{¶ 9} A judgment entry reflecting the granting of the motion was journalized on June 27, 2012. Judge Sage found that because the recording of the Outbound Call contained statements by Ray that related to precipitory circumstances and evidence, were "highly inflammatory," and were "highly prejudicial" to Ray, Ray's right to a fair trial would be prejudiced by the disclosure of the recording. Judge Sage considered alternatives to the closure of the Outbound Call recording, specifically providing a complete or redacted

---

2. Ray was indicted for the murder of his father sometime between June 17 and June 22, 2012. In their brief, respondents state Gmoser filed the motion for protective order on the day Ray was indicted for the murder of his father.

transcript of the Outbound Call recording, but rejected those alternatives.

{¶ 10} The Enquirer subsequently filed a complaint in this court for a writ of mandamus against respondents. Specifically, the Enquirer sought orders that the protective order issued by Judge Sage be vacated, the Outbound Call recording be released to the Enquirer, and Gmoser be ordered to pay statutory damages and attorney fees for his failure to comply with R.C. 149.43. The Enquirer subsequently filed an amended complaint for a writ of mandamus and a writ of prohibition.

{¶ 11} While substantially similar to the original complaint, the amended complaint also sought to prevent the common pleas court from enforcing its June 27, 2012 judgment entry granting the motion for protective order. The amended complaint also alleged that Judge Sage lacked jurisdiction to issue a protective order "in a public records dispute where the record is not before him in the underlying criminal proceeding." In his answer to the amended complaint, Judge Sage denied that the recording of the Outbound Call was subject to disclosure, denied that he had no jurisdiction to issue the protective order prohibiting disclosure of the Outbound Call recording, and set forth various affirmative defenses.

{¶ 12} On October 11, 2012, Judge Sage issued an amended protective order. That order authorized the release of the Outbound Call recording "immediately preceding its admission and publication to the jury in open court at [Ray's murder] trial." Pursuant to the amended protective order, Gmoser delivered the Outbound Call recording to the Enquirer on October 15. Consequently, respondents moved to dismiss the Enquirer's action in mandamus and prohibition as moot. On November 28, 2012, this court denied the motion.

{¶ 13} This case involves the disclosure, pursuant to R.C. 149.43, Ohio's Public Records Act, of the recording of an outbound call made by a 911 operator. For the reasons that follow, we hold that the Outbound Call constitutes a 911 call which is a public record not exempt from disclosure.

**THE MANDAMUS ACTION**

{¶ 14} To prevail on a petition for a writ of mandamus, "relator must establish (1) a clear legal right to the relief requested, (2) that respondents have a clear legal duty to perform the act or acts requested, and (3) that relator has no plain and adequate remedy [at law]." *State ex rel. Cincinnati Enquirer v. Heath*, 183 Ohio App.3d 274, 2009-Ohio-3415, ¶ 11 (12th Dist.), citing *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994).[3] Mandamus is the appropriate remedy to seek compliance with R.C. 149.43. *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, ¶ 23. The Public Records Act "must be construed liberally in favor of broad access, and any doubt should be resolved in favor of disclosure of public records." *State ex rel. Beacon Journal Publishing Co.* v. *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, ¶ 8. "[I]nherent in R.C. 149.43 is the fundamental policy of promoting open government, not restricting it." *State ex rel. Miami Student v. Miami Univ.*, 79 Ohio St.3d 168, 171 (1997). The government "bears the burden of establishing that the requested information is exempt from disclosure." *Bond* at ¶ 8.

{¶ 15} The Ohio Supreme Court has held that "911 [recordings] in general *** are public records which are not exempt from disclosure." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376 (1996); *State ex rel. Dispatch Printing Co. v. Morrow Cty. Prosecutor's Office*, 105 Ohio St.3d 172, 2005-Ohio-685. In ruling that 911 recordings are public records, the supreme court noted certain indicia of 911 calls, including: (1) 911 calls are automatically recorded; (2) 911 calls are always initiated by the callers; (3) 911 recordings are not prepared by attorneys or other law enforcement officials; (4) 911

---

3. However, persons seeking public records under R.C. 149.43 need not establish the lack of an adequate remedy at law in order to be entitled to a writ of mandamus. *State ex rel. Dist. 1199, Health Care & Soc. Serv. Union*, *SEIU, AFL-CIO v. Lawrence Cty. Gen. Hosp.*, 83 Ohio St.3d 351, 354 (1998); *State ex rel. Doe v. Tetrault*, 12th Dist. No. CA2011-10-070, 2012-Ohio-3879, ¶ 21.

recordings are not made to preserve evidence for criminal prosecution; and (5) rather, 911 calls are routinely recorded without any specific investigatory purpose in mind. *Cincinnati Enquirer* at 377-378. "The particular content of the 911 [recordings] is irrelevant." *Id.* at 378.

{¶ 16} The supreme court further noted that 911 operators (1) do not act under the direction of a prosecutor or other law enforcement official when receiving or responding to a 911 call, (2) are not employees of a law enforcement agency, (3) are not trained in criminal investigation, and (4) simply compile information and do not investigate. *Id.* at 377. The fact that 911 recordings subsequently come into the possession and/or control of a prosecutor or other law enforcement official "has no significance. Once clothed with the public records cloak, the records cannot be defrocked of their status." *Id.* at 378.

{¶ 17} Respondents first aver that the Outbound Call is not a 911 call, and therefore not subject to the supreme court's holding in *Cincinnati Enquirer*, because (1) it was an outbound call, as opposed to an incoming call; (2) Rednour, the 911 operator placing the outbound call, was an employee of a law enforcement agency; (3) when Rednour dispatched emergency personnel to the scene of the emergency after receiving the First Call, the basic purpose of the 911 emergency system had been fulfilled; and (4) the questions asked by Rednour were, objectively, the same questions that would be asked by a criminal investigator. Rather, respondents assert that the recording of the Outbound Call is both a trial preparation record under R.C. 149.43(A)(1)(g) and a confidential law enforcement investigatory record under R.C. 149.43(A)(1)(h).

{¶ 18} There are factual distinctions between this case and the 911 call indicia noted by the supreme court in *Cincinnati Enquirer*. First, Rednour is an employee of a law enforcement agency (i.e., the Butler County Sheriff's Office). However, we find this distinction to be insignificant in the resolution of whether the Outbound Call is a 911 call. Rednour testified that although she is employed by the Butler County Sheriff's Office, she is a

civilian employee neither trained in criminal investigation nor tasked with criminal investigation duties.

{¶ 19} The other significant distinction advanced by respondents is that the Outbound Call was initiated by Rednour. We decline to accept this distinction. The Outbound Call was initiated when the First Call was abruptly ended. The Unanswered Call and the Outbound Call, while placed by Rednour, constituted a continuation of the First Call so that Rednour could obtain additional information to provide an emergency response that was both effective and safe. When Rednour placed the Outbound Call, she had no idea a crime had been committed, and had no investigatory intent beyond what was necessary to provide an effective emergency response.

{¶ 20} Likewise, respondents' other assertions do not convert the essential nature of the Outbound Call into something other than a 911 call. That Rednour dispatched emergency responders after the First Call did not satisfy her duty as a 911 operator. As already mentioned, it was imperative that Rednour obtain additional information as to the nature of the injury so that she could tell emergency responders and let them respond appropriately and expeditiously and be apprised of any danger that might confront them. Additionally, although Rednour's questions to Ray may be useful in prosecuting him, their purpose, and Rednour's intention in asking them, were only to accomplish her duty as a 911 operator.

{¶ 21} Accordingly, we find that the Outbound Call is a 911 call.

{¶ 22} In *Cincinnati Enquirer*, the Ohio Supreme Court also addressed whether 911 recordings qualify as trial preparation records or confidential law enforcement investigatory records under R.C. 149.43. The supreme court held that they did not:

> The moment the [recordings] were made as a result of the calls (in these cases-and in all other 911 call cases) to the 911 number, the [recordings] became public records. Obviously, at

the time the [recordings] were made, they were not "confidential law enforcement investigatory records" (no investigation was underway), they were not "trial preparation records" (no trial was contemplated or underway), and neither state nor federal law prohibited their release.

*Cincinnati Enquirer*, 75 Ohio St.3d at 378.

{¶ 23} We therefore find that the Outbound Call is not exempt from disclosure either as a trial preparation record or a confidential law enforcement investigatory record.

{¶ 24} Respondents also aver that the Outbound Call recording should not be released because the release would compromise Ray's Sixth Amendment right to a fair trial due to potential jury prejudice. Respondents assert the Outbound Call recording is, pursuant to R.C. 149.43(A)(1)(v), a "record, the release of which is prohibited by state or federal law," and is therefore exempt from disclosure. Based upon this concern, Judge Sage granted Gmoser's motion for protective order which prohibited public dissemination of the Outbound Call recording.

{¶ 25} It is well-settled that while the First Amendment guarantees the public and press a right of access, such right of access is not absolute. *Bond*, 2002-Ohio-7117 at ¶ 15, 17. The "presumption of openness * * * may be overcome 'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at ¶ 17, quoting *Press-Enterprise Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 508, 104 S.Ct. 819 (1984) (*Press-Enterprise I*). In balancing the Sixth Amendment right to a fair trial and the First Amendment right of access, the United States Supreme Court set forth a two-part inquiry to determine whether the presumption of openness has been rebutted.

{¶ 26} Specifically, if closure is sought on the ground that disclosure would jeopardize "the right of the accused to a fair trial," closure shall be ordered "only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a

fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 14, 106 S.Ct. 2735 (1986) (*Press-Enterprise II*). In applying these standards, a trial court must "(1) make specific findings, on the record, demonstrating that there is a substantial probability that the defendant would be deprived of a fair trial by the disclosure of the [information] and (2) consider whether alternatives to total suppression of the [information] would have protected the interest of the accused." *Bond* at ¶ 30.

{¶ 27} The case at bar presents a situation similar to that before this court in *Heath*, 2009-Ohio-3415. The issue in *Heath* concerned the release of records from a preliminary hearing in a murder case. After the records were ordered to be sealed by a common pleas court, a newspaper filed a complaint for a writ of mandamus seeking vacation of the sealing orders. This court granted the writ of mandamus. This court found that the lower court's sealing orders did not satisfy the criteria for closure recognized by the United States Supreme Court in *Press-Enterprise I* and *Press-Enterprise II*, and applied by our supreme court in *Bond*, 2002-Ohio-7117.

{¶ 28} The protective order in this case did not satisfy the mandates of *Press-Enterprise I*, *Press-Enterprise II*, and *Bond*. First, other than the recording itself, there was no evidence submitted to the common pleas court as to why disclosure of the Outbound Call recording would endanger Ray's right to a fair trial. There was no testimony from psychologists, sociologists, communications experts, media experts, jury experts, experienced trial lawyers, former judges, or others as to how pretrial disclosure of the Outbound Call recording would impact Ray's right to a fair trial. Prejudice cannot be assumed or presumed simply because the Outbound Call recording includes admissions by Ray.

**{¶ 29}** Furthermore, there is nothing to suggest that Ray's statements to Rednour would not have been admissible at trial and submitted to the jury for its deliberations. In fact, Gmoser asserted at the hearing on the motion for protective order that the Outbound Call recording would be admissible evidence. That the Outbound Call recording would eventually be submitted to a jury certainly mitigates any adverse impact upon Ray's right to a fair trial which might result from its pretrial disclosure.

**{¶ 30}** Moreover, Ray's statements to Rednour do not contain salacious or horrific details that might arouse an emotional response in the community against Ray. In fact, Ray's statements include expressions of remorse.

**{¶ 31}** Finally, there was no mention or consideration of why continuances, voir dire, change of venue, cautionary jury instructions, and other protective measures would not have preserved Ray's right to a fair trial. *See State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, ¶ 35. Rather, Judge Sage only considered two alternatives, a complete transcript of the Outbound Call or a redacted version, before rejecting them and noting there were no other reasonable alternatives.

**{¶ 32}** Respondents have also submitted no other material to this court addressing the evidentiary deficiencies noted above from which this court can conclude that the pretrial disclosure of the Outbound Call recording would jeopardize Ray's right to a fair trial, or that total suppression of the Outbound Call recording is the least restrictive alternative to protect Ray's right to a fair trial.[4]

**{¶ 33}** We therefore find the presumption of openness has not been overcome in this case. Accordingly, we grant the writ of mandamus.

---

4. As this is an original action, the parties may submit evidence to this court. The evidentiary material submitted by the parties include the transcript of the hearing on the motion for protective order, Rednour's deposition, Gmoser's motion for protective order, the protective order and the amended protective order, a recording of the First Call and the Unanswered Call, a transcript of the Outbound Call, and affidavits from counsel (including email and other correspondence between the parties) and Enquirer reporter Sheila McLaughlin.

**THE PROHIBITION ACTION**

{¶ 34} The Enquirer also seeks a writ of prohibition against Judge Sage.[5]

{¶ 35} To warrant a writ of prohibition, the relator must establish that "(1) the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is clearly unauthorized by law, and (3) denial of the writ will cause injury for which there is no adequate remedy in the ordinary course of law." *State ex rel. Cincinnati Enquirer v. Bronson*, 191 Ohio App.3d 160, 2010-Ohio-5315, ¶ 10 (12th Dist.).

{¶ 36} The Enquirer argues that Judge Sage did not have jurisdiction to issue the protective order because (1) the Outbound Call recording was not before Judge Sage and therefore not subject to his jurisdiction; (2) the mandamus remedy provided in R.C.149.43(C) is the only mechanism for resolving a public records dispute; (3) a public official may not respond to a request for a public record by seeking declaratory relief from a court regarding the availability of the record; and (4) there is no justiciable controversy to support declaratory relief. We will address the Enquirer's arguments separately.

**A. The Outbound Call recording was not before Judge Sage and therefore not subject to his jurisdiction.**

{¶ 37} The Enquirer avers that Judge Sage was without jurisdiction to consider and grant the protection order because the Outbound Call recording was not before him. That is, the Enquirer claims Judge Sage has jurisdiction to make orders solely with regard to documents that have been submitted to his court as filings, evidence or otherwise, and are subject to his direct control. The Enquirer is correct that the Outbound Call recording was not before Judge Sage in the sense it was not filed with the common pleas court or offered into

---

5. The Enquirer posits this issue in the context of a declaratory judgment. Gmoser did not seek a declaratory judgment from the court and Judge Sage did not grant one. Except where the Enquirer's argument is applicable only with regard to a declaratory judgment, the court will address the argument within the context of the protection order proceedings.

evidence. However, at the very least, the Outbound Call recording was discovery material over which the trial judge assigned to the case has significant authority. *See* Crim.R. 16(C), (D), (F), and (L).

{¶ 38} Gmoser filed the motion for protective order pursuant to Crim.R. 16(C). This rule allows a prosecutor to designate certain discovery material as "counsel only." "'Counsel only' material may not be shown to the defendant or any other person, but may be disclosed only to defense counsel, or the agents or employees of defense counsel, and may not otherwise be reproduced, copied or disseminated in any way." Crim.R. 16(C). Pursuant to Crim.R. 16(F), "[u]pon motion of the defendant, the trial court shall review the prosecuting attorney's decision of nondisclosure or designation of 'counsel only' material for abuse of discretion during an *in camera* hearing conducted seven days prior to trial, with counsel participating." (Emphasis sic.)

{¶ 39} Without question, the protective order was not issued in strict compliance with the procedure contemplated by Crim.R. 16(C). Nonetheless, it is clear that Gmoser implicitly designated the Outbound Call recording as "counsel only," defense counsel did not object to that classification, Judge Sage further sanctioned that classification when he issued the protective order, and the designation means that the material is not to be disseminated to anyone other than defense counsel and his or her agents. *See State v. Hebdon*, 12th Dist. Nos. CA2012-03-052 and CA2012-03-062, 2013-Ohio-1729 (oral nondisclosure certification requirement satisfied during a hearing).

{¶ 40} Furthermore, separate and apart from Crim.R. 16, criminal courts have inherent authority to enter orders to preserve the integrity of their proceedings, including closure orders and orders restricting the litigants and their counsel from disclosing certain information relative to the litigation. *See State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046; *State v. Bush*, 76 Ohio St.3d 613 (1996) (trial judges are at the front lines of the administration of

justice in our judicial system, responding to the rights and interests of the prosecution, the accused, and victims. A court has the inherent power to regulate the practice before it and protect the integrity of its proceedings).

{¶ 41} The Enquirer complains that Judge Sage improperly issued the protection order because there was no evidence before him to support its issuance, and Judge Sage failed to consider alternatives to a total suppression of the Outbound Call recording. However, prohibition does not lay where there is merely an imperfect exercise of jurisdiction, but rather where there is an ultra vires exercise of jurisdiction. Here, there is not "a patent and unambiguous restriction on the jurisdiction of [Judge Sage nor] a complete and total want of jurisdiction which clearly places the pertinent controversy outside the court's jurisdiction." *State ex rel. Lester v. Court of Common Pleas, Div. of Domestic Relation, Butler Cty.*, 12th Dist. No. CA91-05-080, 1991 WL 219669, *2 (Oct. 28, 1991), citing *State ex rel. Aycock v. Mowrey*, 45 Ohio St.3d 347 (1989).

## B. The mandamus remedy provided in R.C. 149.43(C) is the only mechanism for resolving a public records dispute.

{¶ 42} Our decision in *Heath* makes it clear that an order of a court in a criminal matter ordering closure or sealing of certain records does not mean that those records are beyond the reach of a writ of mandamus sought pursuant to R.C. 149.43(C). Likewise, that a record may be subject to a public records request, and therefore a R.C. 149.43 mandamus action, does not divest a court of jurisdiction to determine whether the record ought to be sealed in other litigation pending before it.

{¶ 43} As already stated, mandamus is an appropriate remedy to resolve a public records dispute. A dispute regarding the availability of a record under R.C. 149.43 ought to be resolved pursuant to the procedure set forth therein. In such a proceeding, a closure or sealing order may be evidence that the record is one "the release of which is prohibited by

state or federal law" pursuant to R.C. 149.43(A)(1)(v).

**C. A public official may not respond to a request for a public record by seeking declaratory relief from a court regarding the availability of the record.**

{¶ 44} The Enquirer cites the case of *State ex rel. Fisher v. PRC Pub. Sector, Inc.*, 99 Ohio App.3d 387 (10th Dist.1994), in support of its claim that Gmoser could not do an "end around" of his responsibility to respond to a public records request by asking a court to determine if the record was subject to disclosure. In *Fisher*, the Tenth Appellate District held that:

> As an initial matter, we note that the court is the *final* arbiter regarding disclosure of public records under R.C. 149.43. *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 385. Determination of an application for disclosure under R.C. 149.43 must first be made on an *ad hoc* basis by the governmental body holding the requested information. *Id.* See, also, *State ex rel. Toledo Blade Co. v. Telb* (1990), 50 Ohio Misc.2d 1, wherein the court held that governmental bodies could not invoke the court's function as final arbiter in order to avoid their duty to make records available. Declaratory relief may not be used to circumvent the duty to make the initial determination of whether materials are subject to disclosure under R.C. 149.43.

(Emphasis sic; parallel citations omitted.) *Fisher* at 391.

{¶ 45} *Fisher* is factually distinguishable from this case in two important respects. First, Gmoser did not seek to avoid his responsibility to determine the availability of the Outbound Call recording by filing the motion for protective order. The communications between Gmoser and the Enquirer are clear and unambiguous: Gmoser was denying release of the recording pending completion of the criminal investigation and the commencement of Ray's trial. Second, the protective order was issued as an incident within the context of a separate and independent proceeding (i.e., the *State v. Ray* criminal case) that, in turn, was not commenced for the sole purpose of determining the availability of the record in dispute.

{¶ 46} Furthermore, there is authority that a trial court ought to be involved in determining whether i0nformation subject to the control of the court or the litigants and their

counsel should be disclosed where such disclosure may jeopardize the right of an accused to a fair trial. In such a case, "[t]hese issues should be determined by the trial court, not merely by a custodian of the record ***." *State ex rel. Cincinnati Enquirer v. Dinkelacker*, 144 Ohio App.3d 725, 733 (1st Dist.2001) (granting a writ of mandamus but staying its issuance for ten days to give the trial court an opportunity to determine whether the release of the material would be unfair to the defendant in that case).

### D. There is no justiciable controversy to support declaratory relief.

{¶ 47} The motion for protective order is not a declaratory judgment action and is not subject to declaratory judgment action analysis.

{¶ 48} The writ of prohibition is denied.

### ATTORNEY FEES, STATUTORY DAMAGES, AND COURT COSTS

{¶ 49} The Enquirer seeks an award of attorney fees under R.C. 149.43(C)(2)(b) and statutory damages under R.C. 149.43(C)(1). These provisions allow a court to order a person who has failed to provide a public record, to pay statutory damages and attorney fees to the party who has prevailed in obtaining a writ of mandamus for the production of a public record.

{¶ 50} With regard to statutory damages, R.C. 149.43(C)(1) provides that the amount of statutory damages "shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with [R.C. 149.43(B)], beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." However, the court may reduce an award of statutory damages or not award statutory damages if it determines both of the following:

> That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct of the public office or person responsible for the requested public

- 16 -

records that allegedly constitutes a failure to comply with an obligation in accordance with [R.C. 149.43(B)] and that was the basis of the mandamus action, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with [R.C. 149.43(B)];

That a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.

R.C. 149.43(C)(1)(a) and (b).

{¶ 51} R.C. 149.43(C)(2)(b) governs a court's award of reasonable attorney fees. As with statutory damages, a court may reduce an award of attorney fees or not award attorney fees if it makes both of the above findings. *See* R.C. 149.43(C)(2)(c)(i) and (ii). With the exception of R.C. 149.43(C)(2)(c)(i) and (ii) (which mandate an award of attorney fees when there is no timely response to a public records request or there is a failure to provide access to the requested records within a prescribed period of time), an award of attorney fees in public records cases is discretionary. *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, ¶ 30-32. A court may consider the reasonableness of a public officer's failure to comply with the public records request in determining whether to award attorney fees. *Id.* at ¶ 34.

{¶ 52} *Doe* involved a police chief's refusal to release records relating to the arrest of a juvenile for aggravated arson after the police chief was notified that the juvenile court had sealed the records relating to the incident. An Ohio citizen (relator) filed a complaint for a writ of mandamus in the Court of Appeals for Clermont County. The court of appeals granted the writ. The relator sought $16,875 in attorney fees. The court of appeals awarded $2,000 in attorney fees.

{¶ 53} The supreme court upheld the court of appeals' attorney fees award. The supreme court found that the police chief (1) had provided "a statutorily sufficient reason for the denial of the request," (2) had acted reasonably and in good faith based upon his reliance on the advice of counsel and the juvenile court's letter instructing the police department not to release information concerning the juvenile, and (3) reasonably believed that his refusal to produce the requested records would serve the public policy underlying the juvenile court's sealing order to protect the welfare of juveniles. *Doe*, 2009-Ohio-4149 at ¶38-40.

{¶ 54} In the case at bar, Gmoser and Judge Sage acted in good faith to protect Ray's right to a fair trial. The pretrial disclosure of a murder suspect's confession raises legitimate issues under the Sixth Amendment guarantee of a fair trial. Gmoser further acted reasonably in promptly bringing the issue to the attention of the common pleas court by seeking the protection order. Additionally, Gmoser had ethical concerns pursuant to Prof.Cond.R. 3.6. The facts confronting Gmoser and Judge Sage were unusual in that a telephone call was placed by a 911 operator who was employed by a law enforcement agency, and who solicited incriminating statements from a murder suspect. Gmoser and Judge Sage reasonably believed that withholding the Outbound Call recording and issuing the protective order would promote the underlying public policy of preserving an accused's right to a fair trial.

{¶ 55} The Ohio Supreme Court has also recognized that a determination as to whether to award attorney fees in a public records case ought to include some consideration of the public benefit conferred by the issuance of the writ of mandamus. *Doe*, 2009-Ohio-4149 at ¶ 33, 43 (in granting or denying attorney fees under R.C. 149.43(C), courts can consider the degree to which the public will benefit from release of the records in question). In the case at bar, there is certainly a public benefit from a disclosure of the Outbound Call recording as it will inform the public as to the functioning of both the 911 emergency system

and the criminal justice system. It will also raise public awareness of domestic violence and substance abuse.

{¶ 56} On the other hand, in this domestic violence case, by the time the Outbound Call was disconnected, the perpetrator had been identified and was quickly apprehended shortly after. The immediate disclosure of the Outbound Call recording would not have enhanced public safety or public awareness of an ongoing threat. Further, this is not a case in which Gmoser was refusing to disclose the Outbound Call recording under all and any circumstances. Rather, Gmoser was delaying disclosure until completion of the criminal investigation and the commencement of Ray's trial. The public benefit from an immediate disclosure of the Outbound Call recording, as opposed to its delayed disclosure, is, at best, marginal.

{¶ 57} Based upon the foregoing, we find that an award of attorney fees is not warranted and we overrule the Enquirer's prayer for the same. However, because disclosure of the Outbound Call recording was denied without a proper legal justification, we award the maximum statutory damages to the Enquirer in the sum of $1,000 pursuant to R.C. 149.43(C)(1).

{¶ 58} Court costs are ordered to be paid by Gmoser. Court cost and statutory damages shall be paid by Gmoser in his capacity as county prosecutor.

HENDRICKSON, P.J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 59} I concur with my colleagues. The law in regard to matters decided today is inflexible, yet reasonable application of R.C. 149.43(C) would prevent us from awarding

attorney fees. While both sides of this controversy have genuine concerns, the actions and arguments of counsel reveal shortcomings in the interaction of R.C. 149.43 with the criminal justice system.

{¶ 60} In the pivotal case of *Cincinnati Enquirer*, Hamilton County had a blanket policy of automatically denying all public records requests for 911 recorded calls. *See* 75 Ohio St.3d 374 (1996). While Hamilton County and the Cincinnati Post proposed to the Supreme Court the adoption of a case-by-case, content-based approach to disclosure, the Supreme Court pronounced a per se rule requiring immediate disclosure regardless of content. Among those reasons discussed in our majority opinion today, the court in *Cincinnati Enquirer* determined that 911 calls preceded incident reports and thus could not be considered to be a part of a criminal investigation thereby deserving no confidentiality or exemption pursuant to R.C. 149.43.

{¶ 61} Prosecutor Gmoser, as well as defense counsel, considered the Outbound Call to be crucial evidence in the criminal case and its public dissemination to be highly prejudicial to the defendant in receiving a fair trial from an impartial jury.[6]

{¶ 62} We know today that, depending on the circumstances, the judge presiding over a criminal case may determine that certain evidence disclosed to defense counsel must not be disseminated. Crim.R. 16. The recent amendment to Crim.R. 16 permits a prosecutor in discovery to disclose evidence only to opposing counsel. Despite the demands of due process and constitutional rights that an individual possesses when confronting the

---

6. The defendant's right to an impartial jury within the venue where the offense occurred is constitutionally derived, and if denied, may improperly infringe upon the individual's due process rights. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688. *See also Rideau v. State of Louisiana*, 373 U.S. 723, 83 S.Ct. 1417 (1963) (finding that a video interview played repetitively on television irreversibly tainted the jury pool); and *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507(1966) (finding failure of a judge to protect the defendant from prejudicial publicity deprived the defendant of a fair trial consistent with due process).

government at trial, such rights may nevertheless be regulated.[7]

**{¶ 63}** Even though not officially filed with the court, prosecutor Gmoser did submit the Outbound Call to Judge Sage for review. Prosecutor Gmoser also gave a copy of the recording to defense counsel as discovery material. "Information that a criminal prosecutor has disclosed to the defendant for discovery purpose * * * is not thereby subject to release as a 'public record' pursuant to R.C. 149.43." *State ex rel. Vindicator Printing v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, ¶ 28, quoting *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350 (1997). Yet the per se rule of *Cincinnati Enquirer* requires immediate release regardless of any intended uses or unintended consequences.[8] There appears no room to balance fundamental principles.

**{¶ 64}** Similarly, if there is clear and convincing evidence establishing that a defendant's right to a fair trial would be violated, a judge, after considering alternatives, may seal records in a criminal case overriding the presumption of openness. *See State ex rel. Cincinnati Enquirer v. Heath*, 183 Ohio App.3d 274, 2009-Ohio-3415 (12th Dist.); and *State ex rel. Vindicator Printing*, 2012-Ohio-3328 (decided upon rules of superintendence). Yet again, neither R.C. 149.43 nor the holding in *Cincinnati Enquirer* permit room for deliberation or the weighing of competing interests. Relator urges us to find Prosecutor Gmoser acted in "bad faith" and was deliberately attempting to sabotage the media's request. The evidence suggests the contrary. As a minister of justice carrying the responsibility to see that each and

---

7. With the increase of gang intimidation and organized crime, Crim.R. 16 was also modified to permit the withholding of witness names when a prosecutor is concerned for the witnesses' safety, with judicial review seven days before trial. Crim.R. 16(F).

8. For example, in *State v. Adams III*, 12th Dist. No. CA2009-11-293, 2011-Ohio-536, this court affirmed the defendant's conviction for aggravated murder after he was found guilty of killing a man labeled "a snitch." The victim was riding in a car that was being pursued by the police, and the driver jumped from the car and was not apprehended. The victim surrendered to police, and while in the back of the police cruiser, was videotaped identifying the driver of the car to police officers. The videotape was copied and disseminated within the community, and the victim was murdered for talking to the officer.

every defendant is accorded justice, Prosecutor Gmoser is prohibited from contributing to even the appearance of impropriety in causing unfai prejudice to a defendant. *See* Prof.Cond.R. 3.8 comment.[9]

{¶ 65} Concerned with privacy interests, Justice Pfeifer has consistently suggested the need to balance rights in considering the dissemination of 911 recordings. *State ex rel. Dispatch Printing Company v. Monroe County Prosecutor's Office*, 105 Ohio St.3d 172, 2005-Ohio-685; *State ex rel. Cincinnati Enquirer v. Hamilton County*, 75 Ohio St.3d 374 (1996). Equally important to the public's right to information is the public's interest in protecting individual constitutional rights in the course of administering criminal justice.

{¶ 66} There is no doubt that the public's right to be aware of governmental workings is monumentally important. The press must be empowered to protect the public's interests with a complete and full opportunity to keep the public informed. In this case, Prosecutor Gmoser was not attempting to suppress information about the workings of government or otherwise defeat public awareness, but rather sought guidance from the court to determine the proper timing of such disclosure. The prosecutor, in a timely manner, sought a very brief delay in disclosure so that the trial court could determine if dissemination of records into the public domain would infringe upon the defendant's constitutional rights. Even when the concern is genuine, R.C. 149.43 and established precedent prevent a prosecutor from attempting to protect an individual's constitutional rights. This is inconsistent with a prosecutor's responsibilities in administering justice.

---

9. It places a prosecutor between a rock and a hard place to suggest public records should be released because a change of venue might fix the prejudice created by disseminating information into the media mainstream before trial. This, in essence, requires a prosecutor to engage in the misconduct of creating the prejudice only to force the defendant to give up his original, and proper, venue. If a prosecutor deliberately created prejudice to a defendant so that he would be forced to select a different venue, it would undoubtedly be labeled prosecutorial misconduct. *See State v. Depew*, 38 Ohio St.3d 275 (1988), wherein the dissent criticized the prosecutor for the misconduct of expressing a lack of concern for the defendant's fair trial during pretrial proceedings. A prosecutor's responsibilities in seeking that which is just are more than those of an advocate. Prof.Cond.R. 3.8 comment.

{¶ 67} The legislature continues to deny attention where needed.[10] Justice Kennedy recently urged the Commission on Rules of Practice and Procedure to examine the dysfunction between Crim.R. 16 and R.C. 149.43. *State v. Athon*, Slip Opinion No. 2013-Ohio-1956. Similarly, the commission on the Rules of Practice and Procedure should carefully review Crim.R. 16 and make appropriate recommendations so that various interests may be addressed. The dissemination of 911 recordings, and other public records to be used in the criminal proceedings, could be subject to immediate judicial review and disclosure as determined reasonable and appropriate in order to protect everyone's interest. Otherwise, a prosecutor is forced to engage in conduct contrary to the real ethical concern for the preservation of individual rights by disseminating public records. If we expect prosecutors to fulfill ethical responsibilities beyond those of an advocate, we should empower them as well as the media.

---

10. Justice Pfeifer expressed concerns and invited the legislature to review R.C.149.43 over 17 years ago in *Cincinnati Enquirer*.